The New England Iron Company, Appellant, *v.* The Gilbert (Metropolitan) Elevated Railroad Company, Respondent.

91 153.
130 645

Two contracts, purporting to have been made by the parties, recited that said parties had caused their corporate seals to be fixed and their corpo-

rate names thereto "subscribed respectively by their proper officers." To each contract was in fact attached the corporate seal and the proper signature of each party ; the plaintiff's by a director, the defendant's by its president. In an action upon the contracts evidence was given tending to show that defendant's seal was affixed by its president in the exercise of lawful authority. *Held*, that the evidence was sufficient *prima facie* to establish that the contract was so executed as to bind both parties.

By the provisions of one of the contracts plaintiff, in considerat: covenants therein set forth on the part of the defendant, agreed the materials and to erect on masonry to be furnished by defe elevated iron railway, in New York city, conforming in all pa to plans and specifications approved by engineers named, a copy o specifications it was declared was annexed to the contract. P agreed to commence erecting the railroad at such point on the rou might be named by defendant's president, and to commence work paratory to such erection as soon as that officer should notify it that fendant's capital stock was subscribed, and thirty per cent thereof p into the treasury. Defendant agreed to designate the order in whic the work should be commenced and completed, and to pay therefor specified price per mile in monthly payments for the work done the pr ceding month. Plaintiff was not required to prosecute the work an faster than money to pay therefor should be furnished by defendan Defendant subsequently, without giving plaintiff the prescribed notic entered into a contract with another corporation for the construction the work. *Held*, that although defendant did not, in express terms, u dertake to do the act or give the notice required to set the plaintiff motion, a promise to do so, or at least a promise that plaintiff should ha the building of the railway in case that enterprise was prosecuted by fendant, was implied.

No copy of the plans or specifications was annexed to the contract. Pa that character, however, were produced in evidence bearing the signa of the engineers named, which plaintiff's evidence tended to show were ones referred to. *Held*, that the annexation of the copy of the specif tions was not a condition on which the validity of the contract depend that the originals, so far as referred to in the contract, became constru ively a part of it ; and therefore that the failure to annex the copy wa immaterial.

Provision was made in the contract for subletting all or any part of the work, but it was declared that such subletting should not release plaintiff from its obligations, and that the sub-contractors should be regarded as plaintiff's agents. After the same was executed, and before defendant entered into the new contract, plaintiff became insolvent and assigned all of its property to trustees for the benefit of creditors, the trustees having power to make such arrangement and disposition of the company's contracts as they should deem judicious. The assignment, afte

providing for payment of all of plaintiff's debts, directed the trustees to pay over any surplus to its treasurer. Plaintiff had expended, before the assignment, several thousand dollars in necessary preparation for executing it. The trustees held the shops and machinery transferred, in order that plaintiff might resort to them to execute the contract, and plaintiff's ability so to do, notwithstanding its embarrassment, was established. The trustees settled all claims against the plaintiff and reassigned the contracts to it before defendant entered into the new contract, and the latter was frequently notified of plaintiff's readiness and willingness to perform. *Held*, that the insolvency and assignment did not justify defendant in treating the contract as abrogated, or give cause for rescinding it, and did not discharge that company from its obligations; that the contract was assignable, but conceding it was not, then it was not embraced in the trust deed.

A contract can be rescinded only by the acts or assent of both parties.

Plaintiff is a Massachusetts corporation. After the execution of the assignment it filed certificates in the office of the secretary of that State, under oath of its officers, to the effect that it had ceased operations, assigned its entire property, and had "only a nominal organization for the purpose of liquidation, being wholly insolvent." The court decided these certificates to be conclusive against plaintiff. *Held* error; that, while they were proper evidence, they were not conclusive in an action such as this; that as the corporation was not in fact dissolved or relieved from the obligations of the contracts, it was a question of fact upon the whole evidence whether it was able and willing to perform.

(Argued November 11, 1882; decided January 23, 1883.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 9, 1881, which affirmed a judgment in favor of defendant, entered upon an order dismissing the plaintiff's complaint on trial.

This action was brought to recover damages for an alleged breach of contract.

The material facts are set forth in the opinion.

*A. J. Vanderpoel* and *F. J. Fithian* for appellant. If possible written instruments shall be so interpreted, *ut res magis valeat quam pereat ;* and so that such a meaning shall be given as may carry out and effectuate to the fullest extent the intention of the parties. (Broom's Legal Maxims, 347; *Saunders* v.

*Clark*, 29 Cal. 299.) Where it clearly appears from the acts or words of the parties, or both, that there was something contemplated to be done by one or both parties, not expressed, or imperfectly or mistakenly expressed in words, the law supplies that which is presumed to have been so inadvertently omitted by the parties and will imply that the parties have made those stipulations which as honest, fair and just men they ought to have made. (Addison on Contracts, §§ 1400, 3031; *Odgen* v. *Saunders*, 12 Wheat. 341; Story on Contracts, § 11; Bishop on Contracts, §§ 105, 106; *Elderton* v. *Emmans*, 4 C. B. 478; In Exchequer Chamber, 6 id. 158, 160; 4 H. of L. Cas. 624, 652; *Roberts* v. *Marston*, 20 Me. 275; *Daniels* v. *Harris*, L. R., 10 Com. Pleas, 1–8; *Cherry* v. *Smith & Co.*, 3 Penn. St. 19; *Grove* v. *Hodges*, 55 id. 504; *Booth* v. *Cleveland R. Mill Co.*, 6 Hun, 591; 74 N. Y. 15; *Jones* v. *Kent*, 80 id. 585; *Warner* v. *Wilson*, 4 Cal. 310.) If there be any thing whatever of which the law can take notice, which by reason of, or consequent upon the entering into a contract, will inure to the benefit and advantage of the covenantor or promisor, or to the burden or detriment of the covenantee or promisee (and especially the latter), it is a sufficient consideration. (2 Summary to Langdell's Selected Cases on Contracts, 1021, § 64; 1034, § 89; *Disbrough* v. *Nelson*, 3 Johns. Cas. 81; *B'klyn Oil Refinery* v. *Brown*, 38 How. Pr. 444; Story on Contracts, § 429; 1 Parsons on Contracts, 431; *Conover* v. *Stilwell*, 43 N. J. 54; *Andrews* v. *Pantue*, 24 Wend. 284; *Douglas* v. *Howland*, id. 35; *Rayns* v. *Kneeland*, 10 id. 218–250; 13 id. 114–124; *Phillips* v. *Morrison*, 3 Bibb [Ky.], 105; *Harrison* v. *Gage*, 5 Mod. 411; *Holt* v. *Ward*, 2 Strange, 937; *Fowler* v. *K. & P. R. R. Co.*, 31 Me. 197.) Where a party is under covenant or agreement, express or implied, to perform acts, on the happening of some future event or contingency, if such party, before the time fixed for the happening of such event or contingency (if the time be fixed), or if before it is physically or legally certain that the event or contingency never can or will happen (if the time be not fixed), either openly repudiates his conditional obligation, or does or suffers to be

done any act which puts it out of his power, or the power of the other party, or both, to perform, if the contingency or event should happen, then the liability of such party becomes at once fixed and absolute, and he may be sued as for a breach. (*McIntyre* v. *Belcher*, 14 C. B. [N. S.] 654; *Sterling* v. *Maitland*, 5 B. & S. 840; *Hochster* v. *Delatour*, 22 L. J. [Q. B.] 455; *Short* v. *Stone*, 8 Q. B. 358; *Frost* y. *Knight*, L. R., 7 Exch. 111; *Bradley* v. *Benjamin*, 46 L. J. [N. S.] Q. B. 590; *Cort* v. *Ambergate R. R. Co.*, 6 E. L. & Eq. 230; *Price* v. *Williams*, 1 M. & W. 6; *Sardock* v. *Franklin*, 8 Ad. & El. [N. S.] 371; *Inchbold* v. *West N. C. Co.*, 17 C. B. [N. S.] 733; *Frost* v. *Tilley*, 6 B. & C. 325; *Burtiss* v. *Thompson*, 42 N. Y. 246; *Stewart* v. *Keteltas*, 36 id. 388; *Forbes* v. *Shattuck, M.*, 22 Barb. 568; *Howell* v. *Gould*, 3 Keyes, 422; *Crocker* v. *Holmes*, 65 Me. 195; *Shaw* v. *Rep. Ins. Co.*, 69 N. Y. 292; *Burrell* v. *Root*, 40 id. 496; *Freeth* v. *Burr*, L. R., 9 C. P. 208; *Frost* v. *Knight*, L. R., 7 Exch. 111; *Cort* v. *Amberagte*, 17 Q. B. 127; *S. C.*, 6 Eng. Law & Eq. 230; *Roper* v. *Thompson*, L. R., 8 C. P. 167; *Shaw* v. *Republic Ins. Co.*, 69 N. Y. 286; *Hayner* v. *Am. Pop. L. Ins. Co.*, id. 435). An estoppel is binding only upon parties and privies to the transaction, or act claimed as working the estoppel, and can be taken advantage of only by them. (Best's Law of Estoppel [Morgan's ed.], § 535; *Murray* v. *Cury*, 5 Wall. 795; *Wooster* v. *Green*, 2 Pick. 425; *Lange* v. *Filton*, 1 Rawle [Penn.], 141; *Braintree* v. *Hingham*, 17 Mass. 432; *Mills* v. *Mills*, 8 Watts & Serg. 135.) The evidence relied upon by defendant as tending to show inability and unreadiness on plaintiff's part should have been excluded under its objection as immaterial and incompetent. (*Howell* v. *Gould*, 3 Keyes, 422; *Turner* v. *Johnson*, 7 Dana [Ky.], 434). One who for any cause claims a right to rescind an executory contract without consent of the other parties must give notice of his intention to do so. (*Parmelee* v. *Adolph*, 28 Ohio, 10; *Heald* v. *Wright*, 75 Ill. 17; *Skinner* v. *Newbury*, 51 id. 205; *Carney* v. *Newbery*, 24 id. 203; *Mullen* v. *Bloomer*, 11 Iowa, 360.)

A party who would rescind must do so distinctly and unequivocally. (*Skinner* v. *Parker*, 36 N. H. 449; *Wicks* v. *Robie*, 42 id. 316; *Clarkson* v. *Mitchell*, 3 E. D. Smith, 269; *Jewett* v. *Pettit*, 4 Mich. 679; *Hendricks* v. *Goodrich*, 15 Wis. 679.) Defendant's seal affixed to the contract raises the presumption that it was properly affixed by the proper officer, acting within the powers conferred upon him, and that the contract was the authorized agreement of defendant. (*Lovett* v. *Steam Saw Mill Ass'n*, 6 Paige, 56, 60; *Clark* v. *Farmers' Wool Mfg. Co.*, 15 Wend. 256; *Whitney* v. *Union T. Co.*, 65 N. Y. 576; *Parkinson* v. *City of Parker*, 85 Penn. St. 313; *Benedict* v. *Denton*, Walker [Mich.], 336; *Lovering* v. *Mayor*, 7 Humph. [Tenn.] 553, 558; *Lansing* v. *The Mayor, etc., of Memphis*, id. 558; *City of Memphis* v. *Adams*, 9 Heisk. [Tenn.] 518; 1 Kyd on Corporations, 268; 1 Ventner, 257; 3 Keb. 307; *Lavitt* v. *S. S. M. Ass'n*, 6 Paige, 56; *Clark* v. *Farmers' Manuf. Co.*, 15 Wend. 236; *Clark* v. *Imp. G. L. Co.*, 4 B. & Ad. 315; *B'k of Vergennes* v. *Warren*, 7 Hill, 51; *Com. B'k of Buffalo* v. *Kortright*, 22 Minn. 348; *Miners' Ditch Co.* v. *Zollerback*, 37 Cal. 597.) If Foster was not authorized by an express vote or by the tacit understanding and consent of all the directors to execute the contract, there should be most complete proof to the contrary. (*Whitney* v. *Union T. Co.*, 65 N. Y. 576; *B'k of Middlebury* v. *R. R. R. Co.*, 30 Vt. 159; *Wild* v. *N. Y. & A. S. M. Co.*, 59 N. Y. 644; *Susq. B. & B'k* v. *Gen. Ins. Co.*, 3 Md. 305; *Tenney* v. *E. Warren Lumber Co.*, 43 N. H. 343; *N. Y. Central R. R. Co.* v. *Bastian*, 15 Md. 494; *Perry* v. *Simpson Waterproof Mfg. Co.*, 37 Conn. 520.) Even if Foster's act in executing the contract was originally unauthorized, the subsequent acquiescence and failure to repudiate it for over two years bound the defendant. (*Olcott* v. *T. R. R.*, 27 N. Y. 546; *Woodbridge* v. *Proprietors*, 6 Vt. 204; *Walworth Co. B'k* v. *F. L. & T. Co.*, 629; *Zabriskie* v. *C. C. & C. R. R. Co.*, 23 How. [U. S.] 381; *Reuter* v. *Electric Tel. Co.*, 6 El. & Bl. 341; *Bargate* v. *Shortridge*, 5 H. L. Cas.

297, 318; *Totterdell* v. *F. Brick Co.* L. R., 1 C. P. 674; *P. W. & B. R. R. Co.* v. *Cowell*, 28 Penn. St. 329 ; *Evans* v. *Smallcome*, L. R., Eng. & Ir. App. Cas. 249.)    The defendant is presumed to have had knowledge of the alleged unauthorized act of Foster, which it failed to repudiate. (*Fulton B'k* v. *Benedict*, 1 Hall, 614; *B'k of U. S.* v. *Davis*, 2 Hill, 451 ; *Union G. M. Co.* v. *Rocky Mt. Nat. B'k*, 2 Col. 248.)    The failure to annex the specifications did not render the contract incomplete.   (*Cook* v. *Allen*, 67 N. Y. 578.)    The change of structure did not abrogate the contract. ( *Williams* v. *Vanderbilt*, 28 N. Y. 217 ; 29 Barb. 491; *Harmony* v. *Bingham*, 12 N. Y. 99 ; *Beebe* v. *Johnson*, 19 Wend. 500; *Wheaton* v. *Com. M. S. Ins. Co.*, 82 N. Y. 543 ; *Niblo* v. *Binsse*, 1 Keyes, 476, 3 Abb. N. C. 301.)    The objection that the transfer to trustees and the reassignment to plaintiff, each or either, terminated the contract, is untenable. (*Devlin* v. *Mayor*, 63 N. Y. 8.)    The claim that by the insolvency, assignment of property to trustees, and suspension of its operations for over a year, the company was dissolved, and consequently cannot maintain this action, is untenable. (*People* v. *Phœnix B'k*, 24 Wend. 431 ; *Mech's' B'ldg Assn.* v. *Stevens*, 5 Duer, 617 ; *Tower* v. *Hale*, 46 Barb. 361 ; *Kincaid* v. *Dwinelle*, 5 J. & S. 332; *S. C.*, 59 N. Y. 548 ; *Atty.-Gen.* v. *B'k of Niagara*, Hopkins, 361 ; *Brinkerhoff* v. *Brown*, 7 Johns. Ch. 217 ; *Briggs* v. *Penniman*, 8 Cow. 387, 391, 395 ; *Michles* v. *Roch. City B'k*, 1 Paige, 125 ; *Brandt* v. *Benedict*, 17 N. Y. 97 ; *Revere* v. *Boston Copper Co.*, 15 Pick. 351; *Boston Manuf'y* v. *Langdon*, 24 id. 49 ; *Knowlton* v. *Ackley*, 8 Cush. 95 ; *Hurd* v. *Talbot*, 7 Gray, 113 ; *Coburn* v. *B. P. M. Mfg. Co.* 1 Gray, 243 ; *Folger* v. *Col. Ins. Co.*, 99 Mass. 267 · *In re New South Meeting House*, 95 id. 504

*Francis C. Barlow* for respondent.    Without the plans and specifications alleged to be annexed the contracts were insensible and void for uncertainty. (*Weeks* v. *Maillardet*, 14 East, 368 ; *Moir* v. *Brown*, 14 Barb. 50 ; *Kercheis* v. *Schloss*, 49 How. 286.)    Construed in the light of the surrounding circumstances,

the alleged contracts are clearly provisional and incomplete upon their face and by their terms inoperative; the expressed conditions not having happened and the defects not having been supplied. (*Grierson* v. *Mason*, 60 N. Y. 397; *Seymour* v. *Cowing*, 1 Keyes, 535, 536; *Dietz* v. *Farish*, 53 How. 217; *Ford* v. *James*, 2 Abb. Ct. of App. Dec. 163; *Hutchins* v. *Hebbard*, 34 N. Y. 24; *Cipperly* v. *Cipperly*, 4 T. & C. 345; *Baldwin* v. *Middeberger*, 2 Hall's Sup. Ct. 184; *Fullerton* v. *Dalton*, 85 Barb. 236; *Hughes* v. *Merc. Mut. Ins. Co.*, 55 N. Y. 268–269.) The alleged contracts were not executed by the defendant or by its authority. There was no express authority. (Laws of 1872, p. 2179; 2 R. S. [Banks' 6th ed.], p. 391, § 6; *Skinner* v. *Dayton*, 5 Johns. Ch. 351; *McCullough* v. *Moss*, 5 Denio, 577; *Soper* v. *Buffalo R. Co.*, 19 Barb. 312.; *Darcy* v. *Tamar Co.*, L. R., 2 Exch. 162; *Brady* v. *Mayor*, 2 Bosw: 183; *Leggett* v. *N. J. B'k Co.*, Saxt. Ch. 559.) There is no presumption of authority. (*Jackson* v. *Campbell*, 5 Wend. 576; *Skinner* v. *Dayton*, 5 Johns. Ch. 35; *Leggett* v. *N. J. B'k Co.*, Saxt. Ch. 559; 7 Hill, 51; *L. & F. Ins. Co.* v. *Merch.*, etc., *Co.*, 7 Wend. 34.) But if such a presumption be allowable, it is displaced by proof of the actual and complete authority under which the president was acting. (Burr on Cir. Ev., 36; 3 Black. 371.) There is no implication of authority. (*Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546; *McCullough* v. *Moss*, 5 Denio, 575; *Hoyt* v. *Thompson*, 1 Seld. 320; 27 N. Y. 557; *Risley* v. *I.*, etc., *R. R. Co.*, 1 Hun, 202, 204; 62 N. Y. 245; *L. & F. Ins. Co.* v. *Mech. F. Ins. Co.*, 7 Wend. 31, 33; *Jackson* v. *Campbell*, 5 id. 572, 576; *Dabney* v. *Stevens*, 40 How. 351; 17 Mass. 30; *Leggett* v. *N. J. B'k Co.*, Saxt. Ch. 559, 560; *Adrience* v. *Roome*, 52 Barb. 411; *Brady* v. *Mayor*, 2 Bosw. 183; *Mech. B'k* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 632; Story on Agency, § 76.) There was no ratification by the defendant. (*Salem B'k* v. *Gloucester B'k*, 17 Mass. 30; *McCullough* v. *Moss*, 5 Denio, 577; *Dabney* v. *Stevens*, 40 How. Pr. 349, 350; *Spackman* v. *Evans*, L. R., 3 H. of L. 171, 194, 195; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 68; *DeGroff*

v. *Am. Linen Thread Co.*, 21 id. 127; *Bradley* v. *Bullard*, 15 Ill. 417.)   The alleged contracts were not executed by the plaintiff, or by its authority, and there was, therefore, want of mutuality.   (*Wylde* v. *N. R. R. Co. of N. J.*, 53 N. Y. 156, 163–4; *Townsend* v. *Corning*, 23 Wend. 435; *Tucker* v. *Woods*, 12 Johns. 190.)   To sustain the plaintiff's cause of action, proof was required that it was at all times able and willing to perform its obligations under the alleged contracts. (*Peck* v. *Collins*, 70 N. Y. 382; *Champion* v. *Joslyn*, 44 id. 653; *Porter* v. *Rose*, 12 Johns. 209; *Dunham* v. *Mann*, 8 N. Y. 513; *Lester* v. *Jewett*, 11 id. 453.)   The plaintiff is estopped by its official reports from denying its inability to perform.   (1 Greenleaf on Evidence [Redf. ed.], § 210; *Peck* v. *Burr*, 10 N. Y. 297; *Hewlett* v. *Hewlett*, 4 Edw. Ch. 7; *Freeman* v. *Walker*, 6 Greenl. 68; *Rex* v. *Clarke*, 8 Term Rep. 220; 3 R. S. [6th ed.] 750, 748, § 50; *Briggs* v. *Penniman*, 8 Cow. 387; *Slee* v. *Bloom*, 19 Johns. 456; *B'k of Poughkeepsie* v. *Ibbottson*, 24 Wend. 473; *Bradt* v. *Benedict*, 17 N. Y. 93.)   The alleged contracts were entire, and the legislative abrogation of the defendant's route below Chambers street rendered performance impossible and released both parties from their executory obligations.   (*Dexter* v. *Morton*, 47 N. Y. 64– 65; 2 Smith's Lead. Cas. 50; *Carpenter* v. *Stevens*, 12 Wend. 589; *Giles* v. *Crosby*, 5 Bosw. 389, 394, 395; *Jones* v. *Judd*, 4 N. Y. 411; *Brick Pres. Church* v. *New York*, 5 Cow. 538; *Kildreth* v. *Buell*, 18 Barb. 110; *People* v. *Bartlett*, 3 Hill 571; *People* v. *Manning*, 8 Cow. 297; 24 Barb. 176, 177; Constitution, art. 8, § 1; *Elevated Railroad Cases*, 3 Abb. N. C. 372–466.)   It is the duty of assignees to elect, within a reasonable time, whether they will adopt the contracts of the bankrupt.   (*Smith* v. *Gordon*, N. Y. Leg. Obs. 325, 328; *Streeter* v. *Sumner*, 31 N. H. 558.)   In order to recover, the plaintiff must prove that it was at all times ready and willing to perform.   (*Nelson* v. *Fire Proof Co.*, 55 N. Y. 480, 484; 1 Chitty on Contracts [11th Am. ed.], 424; *Lawrence* v. *Knowles*, 5 Bing. N. C. 399; *Peck* v. *Collins*, 70 N. Y. 382.)   The insolvency of the plaintiff and

the assignment relieved the defendant from all obligations under the contract. (*Devlin* v. *The Mayor*, 63 N. Y. 8, 16–19 ; *Knight* v. *Burgess*, 33 L. J. [N. S.] Ch. 727.] Certain contracts imply the condition of continued and unchanged existence, so that any change is a breach. (Benjamin on Sales, § 570 ; *Taylor* v. *Caldwell*, 3 B. & S. 824 ; *Seipel* v. *Ins. Co.*, 84 Penn. St. 47, 49 ; *Knight* v. *Burgess*, 33 L. J. [N. S.] Ch. 727.) The fact that Mr. Foster was "president" implies nothing whatsoever as to his authority. (*Risley* v. *R. R. Co.*, 1 Hun, 202, 204, 205 ; 62 N. Y. 240, 245 ; *Adriance* v. *Roome*, 52 Barb. 399 ; *Ins. Co.* v. *Ins. Co.*, 7 Wend. 31, 33 ; Morse on Banking [2d ed.], 143, 144.) Conversations with Mr. Foster were, therefore, merely conversations with third persons, strangers, and they in no way bound or affected the defendant. (*Budlong* v. *Van Nostrand*, 24 Barb. 28.) A statement to a third person, that the defendant waived the breach, would not affect any thing, not having been made to the other party to the contract, but to a stranger. (*Traver* v. *Halsted*, 23 Wend. 70.)

DANFORTH, J. Notwithstanding the arguments addressed to us, both orally and in writing, by counsel for the defendant, we find it impossible to say there was not a question for the jury, which, if answered by them in favor of the plaintiff, would have required an assessment of damages for the breach of contract set forth in the complaint. Moreover, since the oral argument, the discussion has been so continued by the contending parties through printed briefs, that we are at once brought to a consideration of that question as presenting the vital point in the case.

The facts are simple. Upon the trial the plaintiff put in evidence two contracts bearing date, the one March 24, the other March 27, 1873, purporting to have been made between it and the defendant, each reciting that the parties had caused their corporate seals to be affixed and their corporate names thereto "subscribed respectively by their respective proper officers" on the day of its date ; and to each there is in fact

the true corporate seal of each party and the proper signature of the corporation by one of its officers, the plaintiff's by Mr. Wiggin, a director, the defendant's by Mr. Foster, its president. By its provisions the plaintiff, in consideration of certain covenants and promises by the defendant, in the contract set out, undertook to furnish all the materials for, and erect on masonry to be furnished by the defendant, an elevated iron railway in the city of New York, conforming in all particulars to the plans and specifications approved by Edward H. Tracy and Henry A. St. John, a copy of which specifications is declared to be annexed and to form a part of the contract " so far as the said specifications refer to the work above·said masonry." The beginning and end of the road is indicated, but it is provided that changes may be made as the defendant shall thereafter designate in writing. The plaintiff agreed to commence erecting the railway at such point on the route as might be named by the defendant's president, and to commence work preparatory to such erection as soon as he should notify the plaintiff " that the capital stock of said railway company is subscribed and thirty per cent thereof paid into the " defendant's " treasury, and, provided such notice shall be given on or before the first of April" then " next," to prosecute the work and the erecting the railway, and have the same completed from Chambers street to Forty-second street by the 1st day of January, 1874. Provision is made for subletting the construction of any or all parts of the railway, " it being understood, however, that such subletting shall not release the " plaintiff from any of the obligations or undertakings in the contract expressed, and that such sub-contractor or contractors are to be regarded as the agents of the plaintiff. The time for the completion of the railway is fixed, provided the defendant seasonably furnishes the masonry. In consideration of these things the defendant agrees to designate the order in which erection of the railway shall be commenced and completed, and pay the sum of $735,-000 per mile, and in certain cases $23,000 per mile additional — as for extra material and labor — in monthly payments of ninety-five per cent of the contract price of all work done and

material furnished and put in place during the month preceding; but it is also provided that the plaintiff shall not be required to prosecute the construction of the road any faster than money to pay therefor shall be furnished by defendant. No copy of specifications was annexed to the contract.

It was held in the court below that the contract was complete both in form and substance, and so executed as to bind both parties; but the trial judge dismissed the complaint because upon the evidence he was of opinion that the plaintiff was itself in fault, and the General Term by a divided court have affirmed his decision. The dissenting judge was for a new trial for error in that conclusion.

We have been led by the argument of the respondent to examine both propositions, but as to the first think it sufficient to say, that we agree with the court below in the opinion that the contract is mutual in all things, and valid and binding on the parties. Its object was within the powers conferred by law upon the defendant (Laws of 1872, chap. 885, p. 2179, vol. 2), and its intention to effect it, was manifested by its common seal. In one view of the facts the seal was affixed in the exercise of lawful authority, and was sufficient to sustain the plaintiff's case, until impeached. Whether the defendant's evidence was enough for that purpose, was at least a question for the jury. (*Burrill* v. *President, etc., of the Nahant Bank*, 2 Metc. 163; *Lovett* v. *Steam Sawmill Ass'n*, 6 Paige, 54; *Whitney* v. *Union Trust Co. of N. Y.*, 65 N. Y. 576.)

Nor do we think it material that the copy plans and specifications referred to in the contract were not in fact annexed to it. Papers of that character were introduced in evidence, executed in duplicate, and bearing the signatures of the persons named. As the evidence stood, the jury might have found they were the ones referred to, and if so, it was sufficient. The work is to conform to "the plans and specifications" — meaning of course the original plans and specifications. It is true the parties say "a copy of which said specifications is hereto" (that is to the contract) "annexed," but the qualification, "so far as the said specifications refer to the work" indicated, relates to

the originals, and in case of difference, they would furnish the criterion by which to determine whether the railway when completed did conform to the agreement. The copy, whether annexed or not, would not govern. Its annexation would furnish a ready mode of determining that question, but the binding quality would be in the original. It was its office to describe the plan, and the copy could not diminish the stipulations, which a reference to it incorporated into the chief agreement. The annexation of the copy specifications was not a condition on which the validity of the agreement depended. If annexed the identification might be more satisfactory, but without that, the contents of the plans and specifications, so far as referred to in the agreement executed, became constructively a part of it, and in that respect made one instrument. (*Cook* v. *Allen*, 67 N. Y. 578; *Tonnele* v. *Hall*, 4 id. 140.) Although the defendant does not in express terms undertake to do the act, or give the notice which shall set the plaintiff in motion, a promise to do so, or at least a promise that the plaintiff shall have the building of the railway if that enterprise is prosecuted by the defendant, is clearly to be implied from the covenants and stipulations which were inserted and to some of which I have above referred, to make the contract binding on the plaintiff There is manifested a clear intention on the part of the defendant to construct the railway, and for that purpose do certain things, among others, raise the money, provide the masonry and give instructions to the plaintiff. These things and others on the part of the defendant, the plaintiff by the contract acquired an interest in having performed, and there is an obligation for their performance to be implied in its favor. (*Booth* v. *Cleveland Rolling Mill Co.*, 74 N. Y. 15; *Jones* v. *Kent*, 80 id. 585; *Roberts* v. *Marston*, 20 Me. 275; Add. on Cont., § 1400.)

Upon the question as to which the learned judge differed in opinion from his associates, we think he was in the right. Of course if, as the respondent contends, the contract was broken and abandoned by the plaintiff, no recovery could be had upon it. But what was the condition of the parties at the time of the breach complained of? In October, 1873, the plaintiff con-

veyed all its real estate and personal property to Daniel C. Holden, William M. Whitney and Edwin R. Wiggin in trust for the benefit of its creditors with power, among other things, in their discretion, to make such arrangement and disposition of any and all contracts of said company as they should deem judicious. On the 24th of November, 1875, these trustees in due form reassigned the contracts of March, 1873, to the plaintiff, with intent, as they declared, to revest the full title in it, and the rights secured thereby, as fully and entirely as if the assignment of October 9, 1873, had not been made.

It is obvious that the first act looking to the performance of the contract was to be taken by the defendant, for it was only after notice of funds in the treasury that the plaintiff was to go on; but this need not be argued, for it was conceded by the learned counsel for the respondent before us that the first act under the contract (treating both papers as being one contract) was to be done by the defendant, and that this act was not done. Nor is the commission of the act of which the plaintiff complains denied. It stands conceded that in February, 1876, negotiations were entered into between the defendant and a corporate body known as "The New York Loan and Improvement Company," for the construction in substance of the very work covered by the contract which I have described, and these negotiations, on the 6th of March, 1876, resulted in a contract for that purpose, binding on both parties. This is the breach on which the plaintiff relies, and it is admitted by the defendant, but its learned counsel contends that the assignment by the plaintiff and the conduct of it, and its trustees, let loose the defendant and justified it in treating the contract as abrogated and rescinded. This was also the ruling below, and such was the course of the trial that the material question is whether the assignment by the plaintiff, to which I have above referred, and the acts and declarations of its officers after it, were such acts of disqualification to perform, as in and of themselves discharged the defendant from the obligation of the contract of March, 1873. I put it in this form, because up to the time of the alleged breach, I discover no evidence of any intention on

the part of the plaintiff to make an end of the contract, nor
any notice to the defendant of a disposition to do so, nor the
omission of any act to the performance of which it was bound.
It should also be borne in mind that, the plaintiff has not at
any time ceased to be a corporation.   It has remained capable
of acquiring and holding property (*Bradt* v. *Benedict*, 17 N.
Y. 93.), and there has been no period of time during the trans-
actions disclosed in the record, when it was not liable to be
sued (*Kincaid* v. *Dwinelle*, 59 N. Y. 548; *Revere* v. *Boston
Copper Co.*, 15 Pick. 351), nor when it might not also sue.
(*Boston Glass Manufactory* v. *Langdon*, 24 Pick. 49.)

The defendant contends that the contract was not assignable.
If that should be conceded it would follow that it was not
embraced in the trust deed, and the question before us would
be easily answered.  But as to that the court below held other-
wise.  The matter of the contract involved no personal relation
or confidence between the parties, or exercise of personal
skill or science, for the contractor was a corporation and its
work was necessarily to be done through agents or servants.
There are no words restraining its assignment, and the mere
fact that the persons representing the contractor are assignees,
and not merely agents or servants, will not operate as a rescis-
sion of, or constitute a cause for terminating, the contract.
(*Devlin* v. *The Mayor*, 63 N. Y. 8.) It could be rescinded by
the acts or assent only of both parties, and here there is no evi-
dence that the plaintiff, at any time, intended to abandon or
dissolve it.   On the contrary there is evidence of an expendi-
ture on its part of several thousands of dollars in necessary
preparation for executing the contract, before assignment, and
no evidence of a refusal, at any time, fully to perform it.   In
fact the time had not come for the plaintiff to do more than it
had done.

Did it evince an intention to be no longer bound by the con-
tract?   It is not contended that it did.  The respondent relies
upon its assignment and insolvency as showing an inability to
perform, and upon that, not as evidence for the jury, but as
calling for a legal conclusion that thereby the defendant was

set free. But the plaintiff was not relieved from the obligation of the contract. Suppose the defendant had, after the assignment, taken the first step, and called upon the plaintiff to perform. There was nothing in the nature of things to prevent the plaintiff, or its trustees, from complying. Suppose it had failed to comply. Then there would have been nothing to prevent a claim for damages on the part of the defendant for its non-compliance. If established, the claim would have been good against the assets, if any there were in the hands of the trustees, not otherwise appropriated, or any property acquired by the corporation. But as the case stood there was no repudiation of the contract, no refusal to perform, no evidence even of inability. The discussion of this proposition is very much limited by the frank and explicit statement of the learned counsel for the defendant, that he does not claim that mere bankruptcy is a rescission by the plaintiff. Much less does that follow a voluntary assignment. Bankruptcy applies the effects of the debtor to the discharge of his obligations, and then releases him from the weight of them. The assignment in this case had no such consequence. It did not change the relation between the contracting parties. The plaintiff still remained the contractor and responsible to the defendant for the performance of his contract with them. (*Mandeville* v. *Reed*, 13 Abb. Pr. 173.)

We think it unnecessary to repeat here the English cases cited by the respondent as to the effect of insolvency or bankruptcy upon contracts made by the insolvent. They have been examined, but the case before us, as it now stands, is not within them. There was in fact no rescission by the plaintiff, nor evidence that the conduct of the defendant was induced either by a belief that there was a rescission, or a belief that the plaintiff intended to abandon the contract, or that the defendant in such belief had likewise abandoned it. Indeed at the time of the breach by the defendant, there had been no notice to the defendant, actual or constructive, of the circumstances now relied upon as a defense. It is claimed that notice should have been given by the plaintiff or the plaintiff's assignees of

an intention to stand by the contract. But such notice could not be necessary until, by the omission of some necessary act on their part, the defendant had been justified in coming to the conclusion that the other party intended to abandon it. Such circumstances raised the question of mutual rescission in *Ex parte Chalmers* (L. R., 8 Ch. App. Cas. 289), and in *Morgan* v. *Bain* (L. R., 10 Com. Pleas, 15). What acts or proceedings then of the plaintiff or its assignees do work that result? " The insolvency and the assignment of the plaintiff?" These things, the learned counsel says, " relieved the defendant from all obligations under the contract." His reasons are: first, the contract is not assignable ; second, an implied condition that the contracting party shall not change its status or condition. The first I have already considered, and we discover nothing from which such a condition can be implied. Varying fortunes in an individual or a corporation are within the common experience of all, but it has not been thought that the obligation of a contract was affected by that circumstance.

If dissolution had taken place, a very different question would come up. Dissolution was not even thought of. The assignment itself, after providing for the payment of all the debts of the plaintiff, directs the trustees to pay over to its treasurer such surplus as might remain, and there is evidence tending at least to show that its assets were considerable, that every claim was settled and its means of raising money ample for any purpose required by the contract. It was, however, held by the trial court that a *prima facie* case as to the plaintiff's ability to carry out the contract, notwithstanding its embarrassment, had been made out, and the plaintiff's counsel did in fact, upon this intimation, forbear further evidence. The ruling upon that point, therefore, must be regarded at this stage of the case as final.

There is evidence also that the trustees held the shops and the machinery — the works, until 1878, in order that the plaintiff might resort to them to execute the contract at any time it had orders to do so. There is evidence of repeated communications to the defendant — one in the fall of 1873, immediately

after its failure and just before or just after the assignment, and some as late as the spring of 1876 — of a desire and readiness on the part of the plaintiff to execute the work, and that the shops were retained for carrying out the contract. But all this the trial court held insufficient, by reason of certificates made by the plaintiff in 1874 and 1875, and filed in the office of the secretary of the State of Massachusetts, to the effect that it ceased operations in September, 1873, and on October 8, 1873, transferred its entire property, real and personal, to trustees for the benefit of its creditors, and now has only a nominal organization for the purpose of liquidation, being wholly insolvent." The certificates were under the oath of the officers of the corporation, and the learned judge held them conclusive against the plaintiff. In this there was error. The certificates were evidence, but excluded no other evidence. It is unnecessary to inquire how far the statements would conclude the corporation in any proceeding by the State — the State is not concerned — nor how far the affiant, if a witness, might be affected if he gave a different version of the matters referred to. His credibility would be for the jury. But no statute has been cited which gives to the papers the force claimed for them as evidence, nor have we any precedent which requires a court to hold them conclusive in a civil action by the corporation to assert its right of property.

If the corporation was not in fact dissolved — as it clearly was not — if it was not relieved from the obligations of the contract — and this we hold — then upon the whole evidence which might be produced by the parties, it was for the jury to say whether the plaintiff was able and ready and willing to execute the contract, and if it was, then, whether by the defendant's violation of it, the plaintiff sustained damages. As to the evidence already in, we forbear comment. As the case now stands it was not properly disposed of at the Circuit.

The judgment appealed from should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur

Judgment reversed.