By the Court.— Sedgwick, Ch. J.
—The terms of sale were made in general phrases, to be applied to the cases of several piers, in different states of needing or not needing repairs. They constituted a contract, virtually upon condition. The department agreed to make repairs to any of *413 the premises, if it was the judgment of the commissioners that the premises needed the repairs. Again, if the commissioners considered that a certain amount or kind of repairs was necessary to place the premises in suitable condition for service during the term, then, in such case, the department agreed to make that amount or kind of repairs. The terms should not be so construed, unless there is no escape therefrom, as to lead to the conclusion that there was no contract of any kind. The fact that the parties used the promissory terms at all implies that they meant them to have some purpose. At the very least, a proper construction will not enlarge the ordinary meaning of words used, or supply new words, when the effect would be to declare that no contract was made, while with the words actually used according to their ordinary meaning, there would be a contract. Such a rule is implied in the decision of Danolds v. State (89 N. Y. 36), while in cases that involve the same fundamental principle, general phrases may be restrained (Nicholas v. N. Y. C. & H. R. R. Co., 89 ld. 370).
Ye inquire then, what does the first condition mean 2 If the ordinary meaning be taken, if no words are supplied, it does not say or intend, that there shall be an oral or quasi judicial declaration of what is the judgment of the commissioners as to this pier needing repairs or that pier not needing them, for instance a resolution. If the commissioners proceeded to repair a pier, it would be competent to order the repairs, without explicitly declaring that the repairs were needed, although they might not be authorized to do it, if the fact were that repairs were not needed. And in this particular contract, the judgment of the commissioners was to be applied only to the perception of which of the piers, included in the terms of sale needed, or which did not need repairs. In the nature of "things, the judgment would consist in seeing in what state the various piers were, whether some were unfit for use without repair and some were fit, and thus being conscious of what the facts were, it would be the action of the mind *414 of the individual commissioners which would precede any action of the board that might order the repairs, when the pier was not in a fit state.
Undoubtedly, if the conditions according to its proper meaning could be shown by evidence to have been fulfilled, the contract should be enforced. This was within the range and possibility of proof. The construction of the contract does not require that the proof should be direct. It may be circumstantial, including the force of legal presumptions.
These circumstances were in the case: The commissioners,-had knowledge of what should be the state of a pier. The law imposed certain duties in respect of that,. and when they sold the piers, they were presumed to know the particular condition of each. Furthermore, I take it, they were bound by their contract to look at the pier, observe its condition, make a judgment as it is called, in respect of it, and a contract to do that is implied. To this case, the decision in New England Iron Co. v. Gilbert Elevated R. R. Co. (91 N. Y. 153) is applicable, the facts here being much stronger for the implication. Now, if the defendant- had been allowed to prove that the pier was so dilapidated that the need of repairs was plainly apparent, there would have been sufficient to sustain a conclusion, if such were draw n, that as a matter of fact, the judgment of each commissioner was that this particular pier, was one that needed repairs.
Much that has been said is pertinent to the construction of what has been described as the second condition. By the first, a case might have been made out that the commissioners should make repairs. The second condition regulated their amount or kind. They were to be such as the commissioner should consider necessary to place the premises in suitable condition for service during the term of three years. The commissioners being bound to begin, the defendant was entitled to have such as the commissioners should think necessary. It was within the range of proof that certain repairs must in any event have been deemed *415 necessary. There was a standard for that to a certain extent. It would be possible to show that up to a certain-point, it was impossible that any one having skill and knowledge, should consider that repairs were not necessary. I suppose that the commissioners could not maintain the position, that the “ consideration” referred to was such as a man might make in refraining to give his skill and attention to the matter, or by a perverted or unjust use of liisfaculties. In the present instance the commissioners not having proceeded to make any repairs, it would be impossible to show what kind of repairs they had in fact considered necessary. It was not necessary to show this. If the commissioners had begun to repair, as was their duty, the defendant would have had the advantage of such repair as the commissioners deemed necessary. An entire breach of the contract had deprived the defendants of this advantage. Although he would have to prove what kind of repairs he would have been entitled to, his right to do this is not destroyed by a supposition that the commissioners could have given no consideration to the matter. They were bound to give it, and indeed having ordered any repairs at all, would have been forced to give it. The contract is not susceptible of the construction that the commissioners might have, or would have had, the right to have not considered the matter at all.
Another clause, it was argued, prevented defendant’s recovery under his cou nter-claim. This was ‘ ‘ that no claim that the property is not in suitable condition at the commencement of the lease, will be allowed by the department.” The defendant did not make such a claim in this action. The terms of sale permitted the department to refrain from making repairs before the term began, and the-claim was that it was bound to make them as soon as practicable, after the term began. Proof of the condition of the pier at the beginning was relevant, as to what repairs, after the beginning would be considered necessary. Another remark as to this clause will be made in considering another clause, interposed against the defendant. It was *416 that no claim will be received or considered by the department for loss of wharfage, or otherwise, consequent upon delay in doing the work of repairing.
Under the rule that has been already given, no words should be added to such provisions. And the words that no claim will be allowed or received or considered by the department will not extend to the making of the claim by action. The words “ any delay in doing the work of repairing,” will not comprehend the case of not doing the work at all.
. Sustaining the objection that the fact of the pier being dilapidated was irrelevant and immaterial, prevented the defendants proceeding to prove other facts, and other questions which are in the case, especially as to the measure of damages, could not be raised on the trial or on this appeal. The decision now is confined to whether the defendant could have an action under the agreement and whether the evidence rejected was relevant.
I am of opinion that the judgment should be reversed and a new trial ordered, with costs of the appeal to abide the event.
Freedman and O’Gorman, JJ., concurred.