jury was fully warranted by the evidence, and that no legal error was committed which requires a reversal of the judgment.

The judgment and order appealed from should be affirmed, with costs. All concur.

(21 App. Div. 118.)　　　In re CARTER et al.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—EFFECT ON CONTRACTS.
    A general assignment by a corporation for the benefit of its creditors does not per se constitute a breach of its outstanding contracts to do work or perform services for third parties, nor does it amount to a rescission thereof.

2. CONTRACT TO CONSTRUCT VESSEL.—TITLL
    Where a shipbuilder enters into a contract for the construction of a vessel, and payments are, according to its terms, made to him by the other party in installments on account as the work progresses, the title remains in the builder until completion and delivery.

3. ASSIGNMENT FOR BENEFIT OF CREDITORS—PRESENTATION OF CLAIMS.
    Persons holding unliquidated claims against an insolvent corporation, arising out of alleged breaches of a contract for services and of a bond, failed, during a space of several years after the debtor's general assignment for creditors, to have them liquidated; and no claims, as contemplated by the statute, were made and filed by them with the assignee. 1 Rev. St. (Birdseye's Ed.) p. 147, § 26. They then sought to have them determined upon an accounting of the assignee, upon a record insufficient for the purpose,—a course which would hinder and delay other creditors, and eat up the estate with the expense of litigation. Held, that the claims should be rejected, and the claimants remitted to their remedy against the assignor.

Appeal from Kings county court.

In the matter of the final accounting of Vaulx Carter, assignee. The Interstate Steamboat Company and F. B. Vandegrift appeal from a decision confirming the report of the referee, and directing a distribution of funds among those entitled thereto. Affirmed.

On August 30, 1893, the Cowles Engineering Company, a New Jersey corporation engaged in the business of shipbuilding, and having a yard for that purpose in the city of Brooklyn, made a general assignment for the benefit of its creditors to the respondent Carter. Prior to the time of making this assignment it had entered into a contract with the Interstate Steamboat Company, also a New Jersey corporation, for the construction of a twin-screw, steel-hull, passenger steamer, of specified dimensions. This contract was executed on the 3d day of March, 1893. By its terms the steamer was to be finished on or before the 22d day of August, 1893. If there was delay by strikes, such delay was to be added, and the time extended accordingly. If not completed within two months of the aforesaid time, the Interstate Steamboat Company reserved the right to reject or accept the steamer upon completion; and, if then rejected, the Cowles Engineering Company was to repay the sum received for its construction, with interest. For each day's delay in completion beyond the specified time the Cowles Engineering Company was to forfeit the sum of $50 as damages therefor. The contract price was $50,000, payable in installments as the work progressed, in specified stages of construction. The Cowles Engineering Company entered upon the construction of the steamer, and had proceeded to a point where her hull had been launched, and was lying in the water at a dock near the shipyard of the company, and the Interstate Steamboat Company had paid thereon $42,500, when the assignment was made. At the time of the execution of the contract for the construction of the steamer the Cowles Engineering Company executed its bond to the Interstate Steamboat Company, with two sureties, in the sum of $25,000, conditioned for the

performance of the contract in accordance with its terms. The bond is not set out in the record. The assignee entered into possession of the property of the Cowles Engineering Company, subject to the lien of a large number of attachments levied by the sheriff, and upon which a large part of the property was sold. There was never any formal rescission of the contract of construction by the Cowles Engineering Company or by the Interstate Steamboat Company. The unfinished hull of the vessel lay in the water at the yard until October 9, 1893, when the Interstate Steamboat Company took forcible possession thereof and towed it away, subsequently procuring its completion at a shipyard in Philadelphia. The bond given by the Cowles Engineering Company was subsequently, and on October 26, 1893, assigned to F. B. Vandegrift. Action was instituted upon this bond, and proceeded to judgment on default of answer, and judgment was entered for $29,172.50. The default was subsequently opened, the judgment vacated, and the action thereon is now at issue, undetermined. On January 23, 1894, the assignee sold at public auction all his right, title, and interest in and to the vessel removed by the Interstate Steamboat Company, and the same was bid in by the respondent Bacon for the sum of $3,500. Upon the accounting before the referee the Interstate Steamboat Company presented a claim for $42,500, being the full amount paid to the Cowles Engineering Company for the construction of the vessel. F. B. Vandegrift presented a claim for $25,000, being the sum secured to be paid by the bond assigned to him. Both of these claims were disallowed by the referee, and also by the court below. Other creditors presented claims, which were allowed and entered in the decree, exceeding in amount the sum of the fund in the hands of the assignee for distribution. The appeal from the decree brings up the question as to the disallowance of the aforementioned claims, and several other questions are sought to be raised.

Argued before CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

H. G. Harris, for appellants.
William H. Shepard, for respondent Carter.
H. C. Closson, for respondent Bacon.

HATCH, J. The general assignment made by the Cowles Engineering Company did not per se constitute a breach of the contract for the construction of the steamer. New England Iron Co. v. Gilbert El. R. Co., 91 N. Y. 153. It undoubtedly established the insolvency of the company. But mere insolvency does not constitute a breach of contract, nor does it amount to a rescission of the same. Pardee v. Kanady, 100 N. Y. 121, 2 N. E. 885. It is quite possible that the assignment, together with the acts of the assignors, the assignee, and the creditors, coupled with the circumstances which thereafter existed, would make a case showing an intent to abandon the contract, or such an inability to complete it in accordance with its terms as would justify the finding of its breach at the time when the assignment was made. Standing alone, it would not necessarily have that effect. The corporation continued to exist. It had the capacity to sue, and also of being sued. It could still conduct its business, if it had the means, and its assignee was not prohibited, from anything contained in the contract or in the assignment, from completing the vessel. It was therefore possible for the company or its assignee to complete the construction of the vessel in accordance with the terms of the contract. By the terms of the contract the vessel was to be completed on the 22d day of August, 1893. There were, however, two contingencies in which the contract might be changed, so far as the date of completion is concerned: If

strikes intervened, within the clause providing therefor, the time was to be extended. There is nothing in the record before us to show that the company was not delayed on account of strikes, and therefore excusable for not having the boat completed upon the date fixed for completion. It was also contemplated that the boat might not be completed on the specified date although there was no delay from strikes. If she was not completed within two months of the specified time, then it rested with the Interstate Steamboat Company to accept or reject, as it chose. It comes, therefore, to the fact that no breach of the contract can be said, as matter of law, to have been occasioned by the assignment, or that breach of the contract was occasioned by the failure to have the boat completed on the 22d day of August. If none of these things constituted a breach of the contract, then it follows that there was no breach made by the Cowles Engineering Company. At least, upon a trial it might be so found. It still had the time in which to complete, and may have had the ability. It was possessed of the right, if it had been guilty of no breach. The title to the boat remained in the Cowles Engineering Company until transferred to the assignee (Andrews v. Durant, 11 N. Y. 35), and remained thereafter in him until he sold his interest. While the boat was owned by the assignee the Interstate Steamboat Company forcibly took possession of and towed her away. If the right still existed in the Cowles Engineering Company or its assignee to complete the construction,—which we neither affirm nor deny,— then this act upon the part of the Interstate Steamboat Company constituted a breach of the contract, and of such a character as deprived the Cowles Engineering Company or its assignee of the ability to perform it according to its terms. If there was no breach of the contract by the Cowles Engineering Company or its assignee, and they were deprived of the power to complete the boat by the act of the Interstate Steamboat Company in taking it away, then no liability would exist upon the part of the Cowles Engineering Company to respond in damages, and there would be no basis for claiming a return of the money paid upon the contract. It would also follow that there was no breach of the conditions of the bond, and in consequence no liability upon it. We may look at this matter from another point of view: Assuming that there was a breach of the contract by the Cowles Engineering Company, this gave the Interstate Steamboat Company no right to forcibly seize and take the boat. It belonged to the assignee. Undoubtedly, the Interstate Steamboat Company would have had a claim for damages arising out of the breach of the contract, and may not have been limited to its action upon the bond. By reason of the existence of its claims, it might have invoked legal remedies which would have reached the boat and secured the claim. It could not, however, forcibly seize and take away the boat, and still have left intact its claim for the money paid for its construction. Its right was to recover such damages as it had sustained by reason of the breach of the Cowles Engineering Company, which might be more or less than the sum which it had paid. The same right existed with respect to the liability created by the bond. The damages secured to be paid thereby were

unliquidated, and proof would be required to establish the amount. Noyes v. Phillips, 60 N. Y. 408. It is quite evident from the discussion which has thus far been had that upon the present record the court is unable to determine what the respective rights of the claimants and the assignee are, or what the Interstate Steamboat Company or Vandegrift is entitled to receive, if anything. It is not necessary that we proceed beyond this point with this branch of the case, except to say that it does not conclusively appear that either the Interstate Steamboat Company or Vandegrift is entitled to recover or receive anything of the assignee. Whatever be their rights, —which we do not determine,—they rest in an unliquidated claim.

It does not appear that any claim, as contemplated by the statute, was ever made and filed with the assignee by either claimant, so that the assignee has not been called upon either to allow or reject the claim. The right existed in the claimants to file such claims with the assignee, and, if he disputed the amount or rejected the claim, provision is made for having the same established. 1 Rev. St. (Birdseye's Ed.) p. 147, § 26. The assignment was made nearly four years ago, and the parties have had an abundance of time in which to have procured the liquidation of their claims. They have thus far refused, and now seek to have the same determined upon an accounting by the assignee, and upon a record which is manifestly insufficient for the purpose. The attempt to do this at the present time is to hinder and delay other creditors who are entitled to a share of the fund, and who may not be paid until after a long litigation, which in this case would undoubtedly eat up the whole estate in the expense of the contest. Claims of creditors under such circumstances should be rejected, and remitted to their remedy against the assignor. In re Adams, 15 Abb. N. C. 61; In re Ives (Sup.) 11 N. Y. Supp. 650, 655; People v. St. Nicholas Bank, 151 N. Y. 593, 45 N. E. 1129.

As to the other questions raised by the appellants, it is sufficient to say that all the parties interested have acquiesced in the decree of distribution as it has been entered, and, as the appellants are without interest therein, they cannot now be heard to complain of its provisions.

The decree should be affirmed, with costs, payable by the appellants personally. All concur.