(33 App. Div. 148.)

VANDEGRIFT v. COWLES ENGINEERING CO. et al.

(Supreme Court, Appellate Division, First Department. August 10, 1898.)

BREACH OF CONTRACT—ASSIGNMENT FOR CREDITORS.

> While the mere fact of a general assignment for creditors does not necessarily incapacitate the insolvent from the continued performance of an executory contract, yet if he transfers to the assignee the title and possession of property which the executory contract requires him to complete and deliver, and directs the assignee to sell it and use the proceeds to pay his debts, he thereby puts it out of his power to perform, and thus commits a breach of the contract.

Appeal from trial term, New York county.

Action by Frederic B. Vandegrift against the Cowles Engineering Company and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

Esek Cowen, for appellant.

Edward B. Whitney and William H. Shepard, for respondents.

RUMSEY, J. On the 3d day of March, 1893, the Interstate Steamboat Company made a contract with the Cowles Engineering Company by which the Engineering Company agreed to build and deliver to the Interstate Company a steamboat, which was to be finished on or before August 22, 1893. The boat was to be paid for by installments. The contract provided that if the Engineering Company should not complete the steamer on or before the 22d of August, 1893, it should forfeit to the Interstate Company the sum of $100 a day damages for each day's delay. It was further agreed that, if the steamer should not be completed within two months after that time, the Interstate Company might accept or reject her upon completion, and, if it did then reject her, the Cowles Company should repay to the Interstate Company all sums which it had received under the agreement. To secure the

performance of this contract, the Cowles Engineering Company, as principal, and the defendants Nevins and Tumbridge, as sureties, gave their bond to the Interstate Company, under penalty of $25,000, conditioned to be void if the Engineering Company should well and truly perform the agreement in accordance with the terms and provisions thereof. The Engineering Company proceeded to the construction of the boat, and continued it until the 30th of August, 1893. Before that time the Interstate Company had paid upon the boat $42,500, and the boat had been launched. She was never completed by the Engineering Company. On the 30th day of August, 1893, the Cowles Engineering Company made an assignment for the benefit of creditors to the defendant Vaulx Carter, who took possession, among other things, of the boat, which was then lying in the water, unfinished. The assignment to Mr. Carter authorized him to take possession of all the property of the Engineering Company, and required him to sell and dispose of it, and convert it into money, and to use the proceeds to pay the costs and expenses of executing the assignment, and to divide the remainder among creditors of the assignor in a manner more particularly directed in the assignment. Mr. Carter, after taking possession of this boat in its unfinished condition, made no effort to complete her; but she remained uncompleted until the 9th day of October, 1893, when the Interstate Company took possession of her and took her to Philadelphia, where she was afterwards completed by that company. The Interstate Company afterwards assigned the bond, and the cause of action for the failure to complete the boat, to this plaintiff, who brought his action upon the bond for the amount of the penalty. At the close of the plaintiff's case a motion to dismiss the complaint was made upon the ground that the title to the steamer passed to the assignee of the Cowles Engineering Company on the 30th of August, 1893, by the assignment; that the taking of the boat out of the possession of the assignee by the Interstate Company on the 9th of October deprived the assignee of the power of completing the boat, and was in fact an acceptance by the Interstate Steamboat Company of the boat as a completed boat in accordance with the terms of the contract; and upon the further ground that there was no evidence of a breach of the contract by the Engineering Company. This motion was granted by the court, and a dismissal of the complaint was ordered, and an exception was taken by the plaintiff. From the judgment entered upon that direction, this appeal is taken.

It is claimed by the defendants that under the contract the Cowles Engineering Company had until two months after the 22d of August, 1893, to complete the boat, and that as the Interstate Company took possession of her on the 9th of October, before that two months expired, it had put it out of the power of the Engineering Company to finish the boat, and therefore it was precluded from bringing this action against the sureties on the bond. It is claimed, on the contrary, by the plaintiff, that by the terms of the contract the boat was to have been completed on the 22d of August, 1893; that by the transfer of the title to the assignee for the benefit of creditors on the 30th

of August, 1893, the Cowles Company put it out of its own power to complete the boat, because it no longer had any title to it; and that the assignee had no power to complete it, because such an act was not within the power given to him by the assignment, and therefore there was at that time a breach of the contract. Such a breach having then occurred, the plaintiff insists that his right of action against the sureties on the bond accrued at that time, and therefore it was error to dismiss the complaint.

It is quite clear, we think, that the necessary result of the contract was that the boat was to be completed on the 22d of August, 1893. The agreement was that, if the Cowles Company should not complete the steamer on that day, it should forfeit $100 a day for each day's delay. That provision of the contract necessarily carried with it an implication that the boat was to have been finished on August 22, 1893. It is quite true that by a subsequent provision of the contract the right to reject the boat for a failure to complete it did not come into existence for 60 days after the 22d of August, and the only penalty for the failure to complete during the 60 days was the forfeiture of $100 a day; but the requirement to complete the boat arises as a necessary inference from the imposition of a penalty for the failure to have it completed on the 22d of August, 1893. It may be true that after that time, and until the 22d of October, the Interstate Company would still have been bound to receive the boat, if it had been completed and tendered to it; but that obligation is a mere matter of grace extended to the Cowles Company by the subsequent terms of the contract, and was not strictly an extension of the time in which the boat should have been delivered. However that may be, it is conceded that the Cowles Company did not complete the boat at any time. On the 30th of August it transferred all its property to the assignee for the benefit of creditors. At that time it had the title to this boat, which, although made for the Interstate Company, and to be delivered to it when completed, had not yet become the property of that company; the boat, until it was finally paid for, being still the property of the manufacturer. Andrews v. Durant, 11 N. Y. 35; The Poconoket, 67 Fed. 262; Id., 17 C. C. A. 309, 70 Fed. 640; Id., 168 U. S. 707, 18 Sup. Ct. ——. When the title to the boat was transferred to its assignee for the benefit of creditors, the Cowles Company ceased to have any further interest in it, or right to interfere with it. So far as it was concerned, therefore, there was no power to complete it, because any interference with the boat after its transfer to Mr. Carter would have been a trespass. The case differs from the case of New England Iron Co. v. Gilbert El. R. Co., 91 N. Y. 153. In that case the New England Iron Company had agreed to perform certain work for the defendant upon the defendant's road, but had made an assignment for the benefit of creditors; reserving to itself, however, the right to perform this contract. In an action against the elevated railroad, arising out of the contract, the court held that, so long as the New England Iron Company still remained in existence, the mere fact that it had made an assignment for the benefit of creditors did not, as a matter of law, prevent its performance of an executory contract to do work and labor upon the elevated railroad. But that case

is widely different from this. It is undoubtedly the law that the mere fact of insolvency does not prevent the performance by the insolvent of a contract to work for another. In re Carter, 21 App. Div. 118, 47 N. Y. Supp. 383. But the contract in this case is something more than that. It involved the duty of completing the boat, and that necessarily required the Cowles Company to keep the possession of the boat, and the title, so as to be able to deliver it to the Interstate Company when it was complete. But by its transfer to Carter it not only deprived itself of the possession of the boat, so that it was not able, without committing a trespass, to do any work upon it, but it expressly required Carter to sell and dispose of all its interest in the boat, and to use the money to pay the debts of the company. The result was that the Cowles Company lost the right and the legal ability either to keep possession of the boat, or to deliver it to the Interstate Company after it had been completed. The case in that respect is very much like the case of Woolner v. Hill, 93 N. Y. 576, in which one who had agreed to make an executory sale of property, having made an assignment for the benefit of his creditors, and transferred the property to that assignee, was held to have disabled himself from the performance of his contract, and to be liable in damages for the failure to perform as soon as, by the assignment, he had transferred the property to his assignee. It is quite true that in Re Carter, 21 App. Div. 118, 47 N. Y. Supp. 383, where this assignment was before the court, Mr. Justice Hatch said that it did not, per se, and standing alone, constitute a breach of the contract for the construction of the steamer. That is undoubtedly the fact. It was quite possible for the Cowles Company to have reserved to itself the right to complete the performance of the contract, as was done by the New England Iron Company, or to impose upon Carter, by its deed, the duty of such completion; and in either case there is no doubt that it still would have had the right to finish the work, subject only to the liability for the penalty. But the court in that case expressly declined to say whether the right existed in the Cowles Engineering Company, or in its assignee, to complete the construction, so that that question, as it comes here, is an open one, and we are not precluded from an examination of it by anything that was said in that opinion.

It is not very material to consider the powers of the assignee, Carter, in respect of the completion of the boat after he had taken possession of it. There is no claim that he made any effort to complete it, or had any intention of doing so. Indeed, he had no power to do so. His right to the property was controlled by his deed, and he could only take the property for the purposes mentioned in the deed, and devote it to the use therein prescribed. All he could do was to sell the interest of the Cowles Company in the boat, and he could do nothing further with it. The result is that when the title to the boat had been transferred to Carter on the 30th of August, 1893, it was out of the power of anybody to complete it, and the Interstate Company was at liberty then to regard the contract as at an end. At that time there arose in behalf of the Interstate Company a cause of action against these sureties for the failure to complete the boat.

It was claimed on the trial that the subsequent taking of the boat by

the plaintiff's assignor operated as an acceptance of her under the contract; but that claim is not insisted upon upon the argument, and is obviously not well founded. If that taking had any effect upon the rights of the sureties, it was only as a defense to the cause of action which then existed against them. Whether it had any such effect as that is not necessary to consider. At the most, it only went to the question of damages.

For these reasons the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.