McAdam, J.
The plaintiff received a large shipment of foreign fruit, including dates, and offered it for sale through Brown & Secomb, auctioneers. He agreed to make an allowance of -J-cent per pound on purchases made by defendants of not less than 4,000 boxes, and ¿ cent per pound on purchases made by them of not less than 8,000 boxes.
The defendants attended the sale and bought in 3,942 boxes of dates, at $8,476.11, and one Elias bought in 4,368 boxes of dates, at $9,273.33. It turned out, after the sale was over, that Elias had made his purchases for the defendants, and hence the defendants are sued for the entire amount of the purchase, $17,749.44, with interest. Elias did not disclose the defendants’ name as purchasers at the sale, but gave his own name as each lot was struck off to him.
The defendants now claim to deduct from the purchase price $1,214.28, being one-fourth cent per pound on the aggregate weight, and base their right to do so upon the ground that prior to the sale they had interested Elias in their contract with the plaintiff; hence, what he did, they did. The plaintiff claims that his understanding with the defendants was personal to them, and made because they were the largest date purchasers in the United States, and the plaintiff wanted to induce them to purchase an unusually large quantity to stimulate other bidders who would be apt to follow the lead of such a well known firm. The plaintiff claims that the defendants, knowing this, refrained from doing as they agreed, and induced Elias to purchase the bulk of the dates in his own name, that other bidders might not be influenced to bid against him, as they might have been against them, and that in this way the plaintiffs lost the consideration which induced them to agree to make an allowance, and the defendants obtained a large quantity of fine dates at an unusually low figure, and now seek a further gain by the one-fourth of a cent a pound allowance.
According to the defendants’ interpretation of the contract, they had the right to bring Elias into it, or at their pleasure might have brought a syndicate of buyers into it, all unknown to the plaintiff, and in that way almost have run the sale to suit themselves, get *68 ting one-fourth of a cent allowance on every pound sold at whatever price the dates were struck off at. The question is whether the contract will bear that construction. It was not assignable, one test of which is the right of survivorship, 5 Lawson’s R. & R., § 2650, which would not have applied, for the privilege was one terminable at the death of the defendants. It was a proposition which should have been met either by some binding acceptance on their part prior to the sale, or by some open evidence of acceptance at the sale, such as buying in their own names to the extent of 4,000 or 8,000 cases. The defendants did neither. The relation in which the parties stood, and the nature of the duties to be performed, with their probable effect upon others, would indicate that there were reasons why the plaintiff selected the defendants as the recipients of the allowance, which would not apply to others not similarly known in that particular line of fruit. If this be so, then the contract was founded on a confidence reposed in the defendants, and created a personal trust, which could be discharged only by the personal acts of the defendants, or by the authorized and announced use of their names at the auction sale. In Smalley v. Greene, 10 Cent. Law J., 16, the question came up as to the right of a lawyer, employed to collect accounts, to sell his business and the power to make the collections.
The court said: “ It is presumed that the defendant’s clients selected him for the collection of their notes because they reposed confidence in his capacity and integrity, or for some reason desired him in preference to all persons else to perform this service. The “defendant had no right to substitute another for the performance of duty which he had agreed to discharge himself, and he could not, without the consent of his clients, bind them to accept another to perform the service in his place.”
In Robson v. Drummond, 2 Barn. & Adol., 303, it appeared that one Sharpe, a coachman, contracted to furnish the defendant a carriage for the term of five years, at a given price per year, payable in advance. At the end of three years Sharpe assigned his contract to his secret partner, Robson, the partnership being unknown to the defendant. Held, that the contract was personal and not assignable. The same principle was enforced in Lansden v. McCarthy, 45 Mo., 106, the case oí a butcher and hotel keeper, and applies to all cases of personal services or duties. Spalding v. Rosa, 71 N. Y., 40. It is, therefore, a rule in equity, that where the agreement is personal, depending upon the learning, skill or other characteristic of the contracting party, he alone can enforce performance. Waterman on Spec. Perf., § 72. The proposition of the plaintiff was not like a proposal in case of “rewards” offered to unascertained persons, for it was addressed to certain well known and specifically designated parties in whom, for obvious reasons, a confidence was reposed, and gratuity offered for the service. If such a confidence does not require that the maxim uberrima fides be adhered to, it at least inhibits the concealment of facts which the party bestowing the confidence was entitled to know, and prevents the slightest unconscientious advantage by the other party, particu *69 larly such as may result from the non-observance of strict business methods.
The leading rule of exposition is, that a contract shall be interpreted to give effect to the intention of the parties, Story on Cont, § 634; 2 Parsons on Cont, 494; Bishop on Cont, § 575; Parshall v. Eggerl, 54 N. Y., 18, and it does seem rational and manifestly just that a party should know with whom he is contracting, before or at the time of the sale, and that no stranger "can be thrust upon him afterwards to his possible disadvantage, and this is evidently just what was contemplated and intended here.
Contracts which contemplate the acts of “ particular ” persons are in their nature personal, and not so elastic as to enable those whose duty it is to perform them to substitute at their pleasure others to perform the trust
The contract conferred no vested right upon the defendants ; it gave them a personal privilege, nothing more; one which might have been withdrawn at any time prior to the sale. It was, therefore, in the nature of a jusprecarium, and unassignable. As the defendants could not have transferred the entire contract, they could transfer no part of it, nor could they bring in a stranger to share its benefits. The defendants, in order to obtain the deduction, must establish a valid contract by the plaintiff to allow them on all purchases made by them, whether in. their name or in that of Elias, í of a cent a pound or they fail in their demand for such allowance. In order to prove such a contract they must show that the parties agreed to the same thing in the same sense, for unless the minds of the parties met as to all these essentials there was no solid foundation on which the deduction can be sustained. A proposition becomes a contract only when met by an acceptance which corresponds with it adequately and entirely. This, like the former proposition, is elementary law.
For these reasons the plaintiff was of right entitled to a verdict for $17,945.64, the aggregate amount of the purchases, with interest The verdict was properly directed, and the motion for a new trial must be denied.