(4 Misc. Rep. 415.)

LEVEY v. NEW YORK CENT. & H. R. R. CO.

(Superior Court of New York City, General Term. July 3, 1893.)

1. CORPORATIONS—CONTRACTS—AUTHORITY OF PURCHASING AGENT.
    The by-laws of defendant railroad company named the purchasing agent among the officers authorized to conduct the company's business. They also provided (subdivision 16) that the comptroller "shall be furnished with copies of all written contracts for * * * (4) supplies, made by any officer or agent of the company with individuals," and authorized the purchasing agent (subdivision 17) to "buy all materials and supplies in general use in every department of the service." Held, that the purchasing agent was authorized to make yearly contracts for supplying defendant with stationery.

2. SAME—APPARENT AUTHORITY—ESTOPPEL TO DENY.
    Where the purchasing agent of a railroad has apparent authority to make contracts for supplying the company with stationery, and a third person has dealt with him a number of years on the faith of his having such authority, the company cannot afterwards abrogate a contract made by the purchasing agent with such third person on the ground that the agent did not possess such authority in fact.

3. CONTRACTS—ACCEPTANCE OF PROPOSITION.
    Bids submitted by a manufacturer for supplying a corporation with stationery for the ensuing year, and written notification of acceptance by a duly authorized agent of the corporation, constitute a contract, which requires the manufacturer to deliver stationery when called on during the period, and which requires the company to order all the stationery required by it during such period.

Appeal from jury term.

Action by Augustus Levey, as assignee of Clarence Levey, against the New York Central & Hudson River Railroad Company, for breach of contract. From a judgment entered on a verdict in favor of plaintiff, defendant appeals. Affirmed.

Argued before FREEDMAN and GILDERSLEEVE, JJ.

Frank Loomis, (John E. Burrill, of counsel,) for appellant.

Wingate & Cullen, (George W. Wingate, of counsel,) for respondent.

GILDERSLEEVE, J.   The assignor of the plaintiff was a stationer, printer, and blank-book manufacturer in the city of New York, and had been doing business as such with the defendant for more than 13 years.   The action was brought to recover damages for the breach of two contracts, viz. one to supply the defendant with all blank books it would require in its business (called in the testimony the "half-bound book contract") from June 1, 1883, to May 31, 1884, and one to supply the defendant with all the "printed blanks" it would require in its business for the year 1884.   The bureau of defendant which had charge of purchasing these supplies was the "purchasing agent's" office, and in 1883 the purchasing agent was Richard C. Moore.   His chief clerk was Frank P. Anderson.   Defendant's by-laws provide that its business shall be conducted by certain officers, one of whom is a "purchasing agent;" that such purchasing agent shall, under the direction of the executive committee, or some one authorized by them, buy all materials and supplies in every department, except such articles or materials the purchase of which may be especially intrusted to other parties; that he shall order for and furnish supplies to the various departments."   Goods of the character called for by the two alleged contracts had been purchased for many years upon annual contracts, manufacturers being asked, in May of each year, to submit proposals for printed blanks for the year.   The printed blanks included about 3,000 different forms.   The alleged contracts required extensive preparations, such as procurement of paper of special manufacture, and the construction of thousands of stereotyped plates; so that the plaintiff's assignor accumulated large amounts of goods that were of little value except to the defendant.   When bids were received, they were examined by the purchasing agent and his clerk, and thereupon the purchasing agent, or, in his absence, his clerk, Mr. Anderson, notified the successful bidder that he was to have the contract during the year.   This was done sometimes verbally and sometimes in writing.   The purchasing agent then notified the storekeeper "who had the contract," and the storekeeper sent the contractor samples of the goods that he would be required to manufacture.   Thereafter, when requisitions were received by the purchasing agent, he, or Anderson, his clerk, would order the goods from the contractor, who would deliver them to the storekeeper, with a bill.   The contractor sent in monthly vouchers containing the items of all bills for the month, which were checked by the storekeeper, audited by the purchasing agent, and paid by the company.   Clarence Levey, the plaintiff's assignor, had been furnishing goods in this way for defendant for many years.   In June, 1882, he had been the lowest bidder on the contract for half-bound books by the year, and had received a written memorandum, admitted to have been signed by Moore personally, stating that the contract was awarded to him.   Under this contract all

these half-bound books had been purchased from Levey during that period.

Following the method of business, as above set forth, in May, 1883, Moore called for bids to furnish the defendant with its supply of half-bound books for the year following the expiration of the contract which Levey then had. Levey thereupon put in the following bid:

"New York, May 15th, 1883.

"R. C. Moore, Esq., Purchasing Agent, N. Y. C. & H. R. R. Co.—Dear Sir: In accordance with request, I herewith submit proposal for blank books for one year from June 1st next. Books, white paper, at 19½ cents a pound. Books, manilla paper, 16½ cents a pound.

"Respectfully, yours,                                    Clarence Levey."

In a few days after, Mr. Moore directed his chief clerk, Anderson, to make Levey out a contract for the year from June 1, 1883, to June 1, 1884, which was done, being indorsed by Anderson on the back of the previous contract for these goods for 1882–83, signed by Moore himself, which indorsement was in these words:

"G. C. Depot, June 1st, '83.

"Contract renewed at 16½ cents for all half-bound manilla blank books, and 19½ cents for white, to June 1st, '84.        R. C. Moore, P. Agt. A."

The second contract was as follows: In December, 1883, Moore called for bids for "printed blanks." Thereupon Clarence Levey sent in the following bid, which Moore told him, within a day after, he had received:

"114 Fulton St., Decr. 18th, 1883.

"Dear Sir: For the year 1884 I propose to furnish white blanks for 15 7–8, and best manilla blanks, required quality, for 13¼ cents per pound.

"Respectfully, yours,                                    Clarence Levey.
"R. C. Moore, Esq., N. Y. C. & H. R. R. R. Co."

On the 15th of January, 1884, Clarence Levey received the following in reply:

"Clarence Levey, Esq.: You being the lowest bidder upon the printing contract for ensuing year, the same has been awarded to you to December 31st, 1884.                                    R. C. Moore. A."

This was in Anderson's writing.

In April, 1884, after the contract for half-bound books had run for 10½ months, and the contract for printed blanks had run for 3½ months, Moore notified Levey that he would not buy any more printing, stationery, or blank books from him; that that contract was broken. After April defendant refused to give Levey further orders, and purchased its supplies of the kind of articles in question from others. This course left on Levey's hands a large quantity of paper of special manufacture, stereotyped plates, and goods which he had provided to perform these contracts, which were rendered practically useless.

The jury, having been instructed as to what facts it was necessary for them to determine favorably to plaintiff in order to entitle him to recover, rendered a verdict in his favor for $4,820. There is sufficient evidence to support the conclusions reached by the

jury on the questions of fact, and, if the instructions of the learned trial judge on the questions of law, intended to guide the jury in coming to its conclusions, are free from error, the judgment should stand. Did Levey agree to furnish, and did the defendant agree to take, all the blank books and all the printing which the defendant would require in its business during the period covered by the writings that are claimed by plaintiff to constitute the contracts? The acts done, if any, which, in connection with the acts of Levey, placed upon the defendant the obligation to take Levey's goods, were done by Moore. If the acts of Moore and Levey constituted valid contracts, were the contracts binding upon the defendant? They were, because the acts of Moore were the acts of defendant, and the contracts, therefore, were defendant's contracts, if Moore was acting within the scope of his duty and authority as an officer of the defendant corporation. The burden of proving that Moore had authority to make the contracts was upon the plaintiff, and the learned trial judge had to pass upon that question of authority as a matter of law. He decided sharply and squarely that Moore was an officer of the defendant corporation, and had authority to make the contracts. The jury were told that the contracts were valid against the defendant, if made by Moore. All the jury had to do, on this branch of the case, was to determine whether Moore did or did not make the contracts. The learned counsel for defendant strenuously urges that this ruling was error. The authority of the purchasing agent to make contracts for the supplies required by the defendant does not seem to have been seriously contested at the trial. During the progress of the trial, defendant's counsel stated "the fact that the purchasing agent's department made purchases is, of course, beyond controversy. That is what it was there for." The question, however, is fairly in the case, and calls for discussion. The by-laws of defendant name the purchasing agent among the officers authorized to conduct the business of the company. This vested in him general authority to conduct the defendant's business that fell within his department and within the line of his duties. The by-laws require (subdivision 16) that the comptroller "shall be furnished with copies of all written contracts for (1) construction, (2) equipments, (3) repairs, and (4) supplies, made by any officer or agent of the company with individuals," etc. By this it is seen that the by-laws clearly contemplate the making of written contracts by its officers. The only duty imposed upon the comptroller by the by-laws in respect of written contracts made by officers on behalf of the company is that of keeping a record of such contracts. It does not appear that the officers are required to furnish the comptroller with copies of the written contracts for any other purpose. The authority of the purchasing agent is defined in subdivision 17 as follows:

"The purchasing agent shall, under the direction of the executive committee, or some one authorized by them, buy all materials and supplies in general use in every department of the service, excepting such articles or materials the purchase of which may be especially intrusted to other parties. He shall order for and furnish supplies to the various departments on written

requisitions of the heads thereof, or of such other officer of the company as may be designated by the president or first vice president; such requisitions to be examined and approved by the auditing committee, to whom he shall certify all bills for purchases made by him."

We are of opinion that the by-laws, as a matter of law, confer upon the defendant's purchasing agent actual authority to make the contracts in question. Having reached this conclusion, it is unnecessary to discuss the force and effect of the evidence outside of the by-laws, as to which there is much, bearing upon the question of Moore's apparent authority to execute the contracts in question. The contention of respondent's counsel that Moore's apparent authority was sufficient to authorize a third person, like Levey, who had for years dealt with him on the faith of his having such powers as naturally belong to the position of purchasing agent, to make the contracts, has strong support in both reason and law. Under the circumstances disclosed in this case, the defendant corporation should not be allowed, to the detriment of a third person, to assert that its purchasing agent had not the authority in fact which he apparently had, and which he had for many years exercised unchallenged. The bids of the plaintiff's assignor, and the notifications in writing of the acceptance thereof made by Moore as the general purchasing agent of defendant, constitute contracts which required the assignor of plaintiff to deliver goods whenever called upon by defendant within the period covered by the contracts, and imposed upon defendant the duty of ordering from the assignor during the same period all of the goods covered by the contracts which it required, and to pay therefor when delivered. Wells v. Alexandre, 130 N. Y. 642, 29 N. E. Rep. 142; Nixon v. Zuricalday, 24 N. Y. Supp. 121; Jugla v. Trouttet, 120 N. Y. 21, 28, 23 N. E. Rep. 1066; Booth v. Mill Co., 74 N. Y. 15; Mansfield v. Railroad Co., 102 N. Y. 205, 6 N. E. Rep. 386; New England Iron Co. v. Gilbert El. R. Co., 91 N. Y. 165. This was substantially the ruling of the learned trial judge, and we believe it to be free from error. The breach by defendant was not disputed on the trial, and there is sufficient evidence to sustain the damages awarded to the plaintiff by the jury.

The question whether the relations to Moore of his chief clerk, Anderson, were such as to make his acts in legal effect Moore's, was left to the jury, under proper instructions, and on this question their verdict is conclusive, since it is sustained by sufficient evidence.

We find no error in the admission or exclusion of evidence, and consider the rules of law laid down by the learned court below, that controlled upon the trial, correct.

The judgment appealed from must be affirmed, with costs.