FREDERIC B. VANDEGRIFT, Respondent, v. THE COWLES ENGINEERING COMPANY and VAULX CARTER, as Assignee, etc., Appellants, and THOMAS F. NEVINS and WILLIAM TUMBRIDGE, Defendants.

1. CONTRACT FOR VESSEL — TIME OF PERFORMANCE. A stipulation in a contract to build and complete a steamboat, that if the builder does not complete the steamer on or before a specified date it shall forfeit a specified sum as damages for each day's delay, and that if it is not completed within two months after the date named, the other party may accept or reject it upon completion, extends the time for completion for the two months, subject to the payment of the penalty prescribed.

2. Prevention of Performance of Contract by Other Party. The failure of the builder to complete a steamboat within the time stipulated by a contract, does not give the other party a right of action upon the agreement, or upon a bond to secure its performance, where he took possession of the boat in its incompleted state nearly two months before the expiration of the time of performance, and it does not appear that completion within the time would have been impossible, if he had not interfered.

3. Contracts — Impossibility of Performance. Impossibility of performance, arising directly or even indirectly from the acts of the promisee, is a sufficient excuse for non-performance of a promise.

4. Tender — Concurrent Acts under Contract. A party to a contract, who seeks to maintain an action, either by way of damages or for the recovery of money paid, for breach of one of a series of concurrent acts, must not only be ready and tender performance upon his part, but must demand performance from the other party.

5. Assignment for Creditors — Effect as Breach of Executory Contract. An assignment for creditors does not operate as a rescission or termination of an executory contract of the assignor — *e. g.*, a contract for the construction of a steamboat — which involves no personal relation or confidence between the parties, or the exercise of personal skill or science, and which contains no restriction on assignment, although the assignment does not expressly authorize the assignee to complete the assignor's contracts or continue his business.

6. Assignee for Creditors — Presumption as to his Course with Reference to Executory Contract. It will be presumed in an action, that an assignee for creditors of a party to an incompleted executory contract would have completed the same after the assignment but for the interference of the other party, where the completion of the work would have been to the interest of the estate.

7. Damage from Breach of Contract — Submitting to Jury. The submission to the jury of the question whether plaintiff's assignor suffered any damage from the breach of a contract to complete a steamboat, is unauthorized where he took possession of the boat in its uncompleted state, never made the last payment stipulated by the contract, and there is no proof that the boat was not worth the amount paid thereon.

8. Forfeiture for Delay in Completing Contract. The amount to be forfeited for each day's delay in the completion of a steamboat, which, under the contract, was to be deducted from the "final payment," cannot be recovered, where the final payment was never made because of a breach of the contract.

*Vandegrift* v. *Cowles Engineering Co.*, 33 App. Div. 148, reversed.

(Argued December 8, 1899; decided January 9, 1900.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered Octo-

ber 4, 1898, which reversed a judgment of the Trial Term dismissing the complaint, and granted a new trial.

This action was brought to recover damages for a breach of contract.

On the third day of March, 1893, the engineering company entered into a written contract with the Interstate Steamboat Company, by which the former agreed to build and complete for the latter a steamboat of the character, dimensions and speed therein provided, and to deliver the same at a time and place provided in the contract. In consideration thereof the Interstate Company was to pay fifty thousand dollars as follows: Ten per cent on the signing of the agreement, twenty-five per cent when all the steel for the steamer was in the yard and shops of the defendant company being worked upon, twenty-five per cent when the steamer was in the frame and the principal forgings, castings, plates and tubes for the engines and boilers were in the shops of the defendant company being worked upon, twenty-five per cent when the steamer was launched, and the remaining fifteen per cent upon its completion in accordance with the agreement. Five thousand dollars of the fourth and five thousand dollars of the fifth payments were permitted to be paid in the bonds of the plaintiff's assignor, to be made and to become due as therein mentioned, and to be secured by a first mortgage upon property therein described.

It was also mutually agreed that, in case the defendant company should not complete the steamer on or before the twenty-second of August, 1893, it should forfeit to the plaintiff's assignor the sum of one hundred dollars per day after that date as damages for each day's delay in the completion of the steamer, to be deducted from the amount of the bonds which the plaintiff's assignor might pay on the final payment. It was also agreed that if the steamer was not completed within two months after the time named, the plaintiff's assignor might accept or reject her upon her completion, and that if she was rejected, then the defendant company should repay with interest all sums paid to it under this agreement. It was like

wise agreed that all the time, which delay in the completion of the steamer should be caused by strikes of workmen, whether in the works of the defendant company or in the works where any of the materials or machinery for such steamer were made, or by epidemics, or by the elements, or by delays of carriers, or by other causes beyond the control of the defendant company, should be added to the time fixed for the completion of such steamer, and the time extended accordingly.

A bond in the penal sum of twenty-five thousand dollars was executed by the defendant company and by the defendants Nevins and Tumbridge as sureties, conditioned for the performance of the contract by the defendant company. The latter entered upon its performance and in August, 1893, the first four installments provided for, amounting to forty-two thousand five hundred dollars, had been paid by the plaintiff's assignor. During that month the defendant company failed, and upon the thirtieth day of the month it executed a general assignment to the defendant Carter for the benefit of its creditors.

Upon the trial the plaintiff proved the contract and specifications, the bond, an assignment by his assignor to him which assigned the bond and all the debt and obligation thereby secured ; that the plaintiff's assignor executed a mortgage upon its real estate and upon certain personal property to the Camden Safe Deposit Company, as trustee, to secure its bonds, and that bonds were issued under that mortgage to the amount of twenty-six thousand dollars. The plaintiff then proved that his assignor made all the payments required by the contract, except the last ; that the boat was launched the early part of August, 1893, was named by the plaintiff's assignor, but was never completed by the defendant company ; that when launched she had some decking, her hull and engines, but no boilers, and there was nothing above the hull ; that no offer or tender of the boat to the plaintiff's assignor was made by the defendant company ; that there were parts of the boat in the shops of the defendant company, brass works, parts of the rudder, tiller wheel, brass fittings for the different parts of the boat, and a number of things ; that the boilers, brass

fittings and other things were sold by the sheriff of Kings county, but it was not proved when the sale occurred; that they were not purchased by the defendant company, but were bought by a young man in the office of Parsons, Shepard & Ogden; that the boat laid at Bush's wharf, Brooklyn, six weeks, during which time she was in charge of the employees or officers of the Interstate Company, and on the ninth or fifteenth of October, was, by the direction of the president of that company, taken to Philadelphia and completed by direction of the plaintiff's assignor. Briefly stated, this is all the evidence that was given upon the trial.

When the plaintiff rested the defendants moved to dismiss the complaint upon the grounds: " *First.* That there is no evidence tending to show that the Interstate Steamboat Company or its assignee Vandegrift has sustained any damage by reason of the failure to complete the boat.

" *Second.* That it appears that within the time within which by the terms of the contract the Cowles Engineering Company was to complete the boat, the Interstate Steamboat Company removed the boat from the possession of the assignee and deprived him and the Cowles Company of the power of completing the boat.

" *Third.* That the removal of the boat within such time and prior to the expiration of the time for her completion, was an acceptance by the Interstate Steamboat Company of the boat as a completed boat in accordance with the terms of the contract.

" *Fourth.* Upon the further ground that there is no evidence of a breach of the contract by the Cowles Engineering Company.

" On the further ground that he has not shown that the defendant, the Cowles Engineering Company, was not prevented from completing the boat by strikes."

This motion was granted, and the plaintiff duly excepted.

*Henry W. Goodrich* and *Jerry A. Wernberg* for appellants No damages were proved as against the Cowles Engineering

Company or Carter. As against the appealing defendants there can be no claim that liquidated damages are recoverable. Hence, the damages must be actual; actual damages must be a matter of proof. (*Noyes* v. *Phillips*, 60 N. Y. 408.) The Interstate Company had no right to take the boat into its possession unless there had been a breach of the contract on the part of the Cowles Company; and the assignment of the Cowles Company was not a breach of such contract. (*N. E. I. Co.* v. *G. El. R. R. Co.*, 91 N. Y. 153; *Devlin* v. *Mayor, etc.*, 63 N. Y. 8; *R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209; *Matter of Carter*, 21 App. Div. 118; *Pardee* v. *Kanady*, 100 N. Y. 121.) The taking of the boat was a breach of the contract by the Interstate Company, said company having no title to the vessel or right of possession until acceptance by it. This breach of contract is a defense to any action brought by the vendee for alleged breach by the other party. (*Dolan* v. *Rogers*, 149 N. Y. 489.)

*Esek Cowen* and *Robert D. Benedict* for respondent. By the fair construction of the contract of March 3, 1893, the Cowles Company was to deliver the boat on or before August 22, 1893, unless delayed by causes beyond the control of that company. (*A. L. Ins. Co.* v. *McAdden*, 109 Penn. St. 399.) The assignment by the Cowles Company of the subject-matter of the contract to a trustee, with instructions to sell the boat and divide the proceeds among its creditors, thus divesting itself of all title to the boat, and of all right to complete and deliver it, was of itself a breach of the contract, and gave the plaintiff an immediate right of action. (*Heard* v. *Bowers*, 23 Pick. 455; *Newcomb* v. *Braskill*, 16 Mass. 161; *Ford* v. *Filey*, 6 B. & C. 325; *U. S.* v. *Behan*, 110 U. S. 339; *Rensues* v. *M. N. Co.*, 22 Fed. Rep. 522; *Hawley* v. *Keeler*, 53 N. Y. 114; *Woolner* v. *Hill*, 93 N. Y. 576; *Burtis* v. *Thompson*, 42 N. Y. 246; *Windmuller* v. *Pope*, 107 N. Y. 674; *Bowdell* v. *Parsons*, 10 East, 359.)

MARTIN, J. This controversy is based upon the agreement between the plaintiff's assignor and the defendant company

and the bond given to secure its performance by the latter. To authorize a recovery upon the bond, upon the contract, or for the money paid thereon, it was incumbent upon the plaintiff to show that there was something due under the agreement, or that it had been broken by the defendant company without fault of the plaintiff's assignor and anterior to any breach by the latter. This involves a determination as to the time within which the defendant company was required to complete and deliver the steamer to the plaintiff's assignor.

The appellants insist that, in any event, the time for the fulfillment of the contract did not expire until the twenty-second day of October, 1893, and as there was no proof that the company was not delayed by strikes, epidemics, delays of carriers, or other causes beyond its control, it was not shown that its time did not extend beyond that day. The first clause of the contract relating to the subject provides that the steamer shall be completed on or before the twenty-second day of August, 1893. If this was all of the agreement relating to the question of time, there would be no difficulty in determining it. But we find two others, both of which relate to and bear directly upon the intention of the parties as to the time within which the defendant company was bound to complete and deliver the boat. The first is to the effect that the company should forfeit one hundred dollars for each day's delay in completing her after August twenty-second, and if she was not completed within two months after that time, the plaintiff's assignor might, at its option, accept or reject her upon completion. From this provision the plain and necessary implication is that the defendant company was to have two months' further time for her completion, although it might be liable to pay the specified penalty for its delay. The next provides that any delays caused by strikes or other conditions mentioned should be added to the time fixed for the completion of the work, and that the time should be extended accordingly. Thus, it is manifest that the time for the completion of the vessel was not fixed abso-

lutely as the twenty-second of August, so far as the defendant company was concerned. While it may be that the plaintiff's assignor could not have been required to accept the boat and pay the full consideration before that time, yet the provisions of the contract show a clear intent that the defendant company should not be absolutely required to complete her on or before that date. It is true if it did not, it might become liable to pay the penalty prescribed. But this was the only loss or liability to which it was to be subjected until two months after that time, when the plaintiff's assignor might accept or reject her as it saw fit. Thus, prior to October twenty-second it possessed no right to reject her, and, consequently, if she was completed in accordance with the contract within that time, it was bound by its agreement to accept her and pay the contract price, less only the penalty which was provided for delay after the twenty-second of August. Moreover, in case of strikes, epidemics, delays of carriers, or other causes beyond the control of the defendant company, the time of such delays was, by virtue of the contract, added to the time provided for her completion. It is, therefore, obvious that under the contract the defendant company had at least until the twenty-second of October within which to complete its work.

As there was no rejection of the steamer by the plaintiff's assignor, and no breach of the agreement upon the part of the defendant company by reason of her non-completion, it follows that the plaintiff's assignor had no right of action at the time it took possession of and removed her. The contract being then in force, the defendant company having broken none of its provisions, the plaintiff's assignor had no right to the possession of the vessel, and the contract was first broken by it when, about six weeks before the ninth of October, it took possession of her and thus prevented her completion.

It is no answer to say that the steamer could not have been completed between the time it was taken and the twenty-second of October, as there was no proof that it could not have been thus completed, nor that the time had not been

extended by reason of strikes or some other of the causes mentioned in the agreement. The defendant company had the full time given by the contract, of which nearly two months remained within which to perform it if possible, and the plaintiff's assignor was not authorized to prevent its performance, or its attempted performance, during that time, by the removal of the boat. That the title to it remained in the defendant company until it was delivered and accepted by the plaintiff's assignor, is expressly admitted by the respondent.

While impossibility of performance is, in general, no answer to an action for damages for non-performance of a contract, provided the contingency was such as the promisor should have foreseen and provided against, yet, if the impossibility arises, directly or even indirectly from the acts of the promisee, it is a sufficient excuse for non-performance. This is upon the principle that he who prevents a thing may not avail himself of the non-performance which he has occasioned. (*Dolan* v. *Rodgers*, 149 N. Y. 489, 491.)

Nor was there any proof of a tender of performance by the plaintiff's assignor, or demand that the defendant company should perform the contract upon its part. It is evident from the agreement that the intention of the parties was that the completion and delivery of the vessel and the payment of the last installment should be dependent and concurrent acts. Where, by the terms of a contract, the acts are to be concurrent, it is the duty of him who seeks to maintain an action for its breach, either by way of damages for its non-performance, or for the recovery of money paid thereon, not only to be ready and tender performance upon his part, but he must demand performance from the other party. (*Ziehen* v. *Smith*, 148 N. Y. 558; *Higgins* v. *Eagleton*, 155 N. Y. 466; *Glenn* v. *Rossler*, 156 N. Y. 161; Benjamin on Sales [7th ed.], § 592; *Gazley* v. *Price*, 16 Johns. 267.)

While there are qualifications to this rule where a formal tender or demand becomes unnecessary, such as a refusal in advance to comply with the terms of the contract, or where its performance is proved to have been impossible, yet they

have no application here as neither of those facts was established upon the trial.

The respondent, however, contends that the general assignment by the defendant company constituted a breach of the contract, and, hence, this action could be maintained. We do not assent to that proposition. A general assignment does not constitute a breach of a contract with the assignor by reason of the insolvency which such an act imports. The insolvency of one of the parties to an executory contract of sale is not equivalent either to a rescission or a breach. (*Pardee* v. *Kanady*, 100 N. Y. 121.) Where the subject of the contract involves no personal relation or confidence between the parties, or the exercise of personal skill or science, and there are no words restraining its assignment, the mere assignment by one of the parties will not operate as a rescission or termination of the agreement. (*Devlin* v. *The Mayor*, 63 N. Y. 8; *R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209, 216; *Wells* v. *Alexandre*, 130 N. Y. 642.) Nor is the rule different where the assignment is for the benefit of creditors. (*New England Iron Co.* v. *Gilbert El. R. R. Co.*, 91 N. Y. 153.) In the case last cited, where there was a general assignment for the benefit of creditors, it was expressly held that insolvency and the making of such an assignment did not justify the defendant in treating the contract as abrogated, or give cause for rescinding, and did not discharge the defendant from its obligations thereunder. The principle of that case seems to be controlling upon the question we are now considering, unless it is distinguishable from the case at bar. The only distinction claimed is that in the *Iron Company* case there was a provision in the assignment which gave the trustees power to make such arrangement and disposition of the company's contracts as they should deem judicious, while no such provision is found in the assignment in this case. Hence, in determining the pertinency and weight of that decision, the question arises whether that provision in the assignment in any way changed its effect. It seems to us not. It in no way changed the rights of the assignees. The same duties were imposed

and the same rights existed by virtue of the assignment, independently of that provision, as existed under it. Indeed, if it had changed the character of the assignment, it would, for that reason, have rendered it void. (*Dunham* v. *Waterman,* 17 N. Y. 9; *Robbins* v. *Butcher,* 104 N. Y. 575.)

"It frequently occurs that the assignor had entered into contracts prior to his assignment, which, at the date of the execution of that instrument, were still incomplete, or, if executed, remained unpaid for. The interest in all such contracts pass with the rest of the debtor's property to the assignee, and he may enforce the same against the parties interested in the same manner as his assignor might have done, or may, at his option, go on and complete the contracts, either on his own discretion or under an order of the court, as the case may be." (Headley on Assignments, 77; citing *Robbins* v. *Butcher,* 104 N. Y. 575; *Van Dine* v. *Willett,* 38 Barb. 319; *Collins* v. *Colmey,* 14 N. Y. S. R. 444.)

In Burrill on Assignments (§ 396) it is said: "Independently, however, of any authority contained in the assignment, the assignee may, in certain cases, continue the business as it has been conducted by the debtor. Thus, where an assignor is conducting a manufacturing business when he makes an assignment, and he has a large amount of material on hand for the purpose of being manufactured, the assignee can conduct the business in his own name, for the purpose of working up the material thus ready for manufacture, where it is manifestly for the benefit of the estate."

In *Woodward* v. *Marshall* (22 Pick. 468, 474) it is said: "They (the assignees) of necessity have some discretion in the administration of the trust property. If it be perishable, they are bound to resort to the proper means for its preservation, until it can be advantageously disposed of.   *   *   *   So if it be unsalable by reason of the unfinished state of its manufacture, we can see no reason why it should not be completed and prepared for market. And in our opinion, the authority here expressly conferred (which authorized the assignees to work up the stock in process of manufacture) would have

been implied by law as necessarily incident to the principal powers granted. Where the estates of insolvent men are liable to be transferred, and that too, generally, without much discretion in the selection of a propitious opportunity, it will necessarily happen that property of all kinds and in every stage of preparation for market, will come into the hands of assignees; and unless they exercise the power of preparing it for market, it will often perish or be sacrificed. Of the propriety and expediency of the measures to be adopted, they must judge in the first instance. Whether they abuse their trust or not, may be inquired into in a proper form of action." In *Miller* v. *Mulford* (31 N. J. Eq. 661) it was held that such an assignee might, for the benefit of the estate, complete unfinished contracts of the debtor, provided he exercises reasonable discretion.

In *Watson* v. *Butcher* (37 Hun, 391) there was a general assignment for the benefit of creditors which contained a clause providing that, should it be necessary to the better performance of the trust, the assignee should have full power and authority to finish such work as was unfinished, to complete such buildings as were incompleted, and to pay all necessary charges and expenses for such completion prior to the debts and liabilities of the assignor, and it was there held that this clause gave to the assignee no additional right beyond that which the law gave and imposed, and, hence, that its insertion in the assignment did not render it fraudulent as to creditors, or require it to be set aside.

In *Matter of Carter* (21 App. Div. 118), which was an accounting to which the plaintiff in the present action, his assignor and the defendant assignee were parties, this agreement was under consideration. It was there held, 1. That the general assignment by the defendant company did not *per se* constitute a rescission or breach of the agreement now under consideration; 2. That there was no breach of the contract by reason of the failure of the defendant company to complete the boat; 3. That the damages were not liquidated; and, 4. That there having been an omission for four years to present

a claim against the assignee, no recovery upon the bond or upon the contract should be allowed on his final accounting. The decision in that case was affirmed by this court without opinion.  (155 N. Y. 627.)

The discretion vested in the assignee in respect to the completion of unfinished contracts is, however, limited and temporary in its nature and is strictly confined to the time necessary to close out the stock or finish the incompleted business.

In the case at bar it evidently would have been to the interest of the estate for the assignee to complete the work, thus becoming entitled to the remainder of the contract price and at the same time obviating any claim by the plaintiff's assignor for the money paid thereon.  Therefore, presumptively, he would have done so but for the interference of the plaintiff's assignor, by which he was prevented from completing the boat.

Again, it is obvious that no one, other than creditors, could interfere with the assignee in the disposition of the affairs of the assigned estate, and if he had the consent of the creditors to complete the boat his doing so would clearly have been proper and the plaintiff's assignor would have had no right to prevent its completion by him if finished within the time provided in the contract.  (Headley on Assignments, 76.) There is no evidence that he did not have that consent, nor that he did not possess the right to perform the contract in behalf of the defendant company and its creditors.  Under these circumstances we are of the opinion that the principle of the case of *New England Iron Co.* v. *Gilbert El. R. R. Co.* is applicable, and that the assignment did not abrogate the contract between the plaintiff's assignor and the defendant company or constitute a breach of it.

Therefore, it was while the contract was executory, and before the time for its completion had expired, that the plaintiff's assignor took possession of the vessel and subsequently procured its completion.  While it may be that the assignee of the defendant company would have been justified in treating such taking as a tresspass, he was not required to do so, but might disregard the tort and regard the taking as an

acceptance under the provisions of the contract. It was taken before the period when the plaintiff's assignor had a right to reject it, and there was no proof of any rejection. Therefore, in view of the situation at that time, the taking might well be regarded as an acceptance under the contract. It having paid forty-two thousand five hundred dollars and the defendant company being insolvent, it doubtless regarded it more to its advantage to accept the property in its incompleted condition as a compliance with the contract, than to rely upon the responsibility of the defendant company for the money paid thereon. Having thus taken possession of the vessel as it could rightfully do only in case it was accepted under the contract, presumptively it was so accepted, and the plaintiff's assignor, after having elected to thus accept the boat, is estopped from insisting to the contrary and thereby imposing upon the defendant company a liability which might not otherwise have arisen.

The appellants also contend that there was no proof that the plaintiff sustained any damage by reason of a breach of the contract of which he complains. The only proof in the case bearing upon this question was the execution of the contract, the payments made under it by the plaintiff's assignor, that the boat was not fully completed by the defendant company on August twenty-second, that the latter made an assignment for the the benefit of creditors on the thirtieth of August, that the plaintiff's assignor almost immediately took possession of the boat, and that she was subsequently completed under the directions of that company. From this proof, it is difficult to perceive that damages to any amount were established. The plaintiff's assignor having taken the boat with no proof that it was not of a value equal to the amount paid on the contract, or even of greater value, we do not find any evidence which would have justified the court in submitting the question of damages to the jury, even if we were to assume that there had been a breach of the contract upon the part of the defendant company or its assignee, which is by no means permissible, as we have already seen.

If it be said that the proof disclosed a covenant upon the part of the defendant company to forfeit to the plaintiff's assignor one hundred dollars for each day's delay after the twenty-second of August, the answer is that if it was a provision for a penalty the plaintiff could recover only the actual damages sustained; but be that as it may, inasmuch as it was not to be paid by the defendant company, except by a deduction of the amount from the bonds of the plaintiff's assignor, which were to be delivered on the final payment of the consideration for the vessel, it is plain that under the evidence the plaintiff could not recover any portion of the penalty prescribed by the contract under the proof in this case.

For the reasons stated we are of the opinion that the trial court was justified in dismissing the plaintiff's complaint, and that the learned Appellate Division erred in reversing its determination.

The order of the Appellate Division should be reversed and judgment of the trial court affirmed, with costs in all the courts.

Bartlett, J. (dissenting). The important chronology of this case is confined to the year 1893.

The Cowles Engineering Company agreed in writing to construct a steamer for the Interstate Steamboat Company for $50,000.00 to be completed by August 22d; the contract further provided that if the steamer should not be completed within two months after August 22d, the Interstate Company might accept or reject her upon completion, receiving $100 a day as damages if accepted and the money paid on contract if rejected. The Cowles Company did not complete the steamer by August 22d, and on August 30th made a general assignment for the benefit of its creditors.

On or about the 15th of October the Interstate Company took possession of the steamer, towed her into another jurisdiction and completed the work of construction. The Interstate Company received a bond from the Cowles Company for the faithful performance of the contract, and now seeks, by its assignee of the cause of action, to recover damages.

57

The record discloses that the Interstate Company had paid $42,000.00 on the contract prior to the general assignment of the Cowles Company, and the question is whether it was damaged after completing the boat. As the complaint was dismissed, the plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence, and to all inferences warranted thereby.

The plaintiff's proofs show that the Cowles Company never completed the steamer, and that the Interstate Company did; that the Interstate Company did not take possession until about a week before October 22d; that the steamer was not launched until August, but her boilers were not on board, and there was nothing above the hull; that there were parts of the boat in the shops of the Cowles Company, brass works, portions of the rudder, the tiller wheel, the brass fittings; that the boilers, brass fittings and other things were sold by the sheriff of Kings county, and the Cowles Company did not buy them.

The fair inference from all this proof, in addition to other facts, is that the steamer was not completed by the Cowles Company, or its assignee, and that neither intended to do so; that it would have been impossible to complete the contract during the time between the Interstate Company taking possession and October 22d — about a week.

I think the Interstate Company, through the plaintiff, should have been allowed to prove such damages as it had suffered, if any, subject to the defenses the Cowles Company, or its assignee, might interpose and establish.

I favor affirmance.

PARKER, Ch. J., HAIGHT and VANN, JJ., concur with MARTIN, J., for reversal.

GRAY and O'BRIEN, JJ., concur with BARTLETT, J., for affirmance.

Order reversed, etc.