Investment Company against the Bankers' Life Insurance Company. No opinion. Motion granted, with $10 costs. Order filed.

KOEN, Appellant, v. CITY OF NEW YORK, Respondent. (Supreme Court, Appellate Division, Second Department. January 10, 1908.) Action by Mary Koen, as administratrix, etc., of Joseph A. Koen, deceased, against the city of New York. No opinion. Judgment and order unanimously affirmed, with costs.

LAVIN, Respondent, v. DEGNON CONTRACTING CO., Appellant. (Supreme Court, Appellate Division, Second Department. January 10, 1908.) Action by Michael Lavin against the Degnon Contracting Company. No opinion. Judgment and order unanimously affirmed, with costs.

LESE, Appellant, v. LAMPRECHT, Respondent. (Supreme Court, Appellate Division, First Department. January 10, 1908.) Appeal from Special Term. Action by Louis Lese against Anna Lamprecht, individually and as executrix of the estate of Hugo Lamprecht, deceased, for the specific performance of a contract. From a judgment for defendant, plaintiff appeals. Affirmed. John D. Connolly, for

appellant. Arthur J. Westermayr, for respondent.

PER CURIAM. Judgment affirmed, with costs.

HOUGHTON, J., dissents.

LAMBERT, J. (dissenting). The plaintiff entered into an agreement in writing with Hugo Lamprecht, defendant's testator, on the 17th day of August, 1905, by the terms of which agreement the said Hugo Lamprecht undertook to sell, and the plaintiff to purchase, certain premises, described in the complaint and located at ·120th street, for the sum of $7,500. The vendor agreed to convey the said premises free from all incumbrances, excepting a certain party wall agreement, and to pay the taxes for the year 1905. The plaintiff paid $500 on account of the purchase price, and agreed to pay the balance of $7,000 on the delivery of the deed; it being agreed that if the title to the premises proved defective the vendor should restore the $500 and the contract was to be canceled. The deed was to be delivered at the office of Lese & Connolly, No. 35 Nassau street, New York, on the 5th day of October, 1905, at 11 o'clock a. m. On the day agreed upon the parties met, and there is no dispute that at that time there was an outstanding mortgage of $2,000 held by the Bowery Savings Bank, and, so far as the record discloses, this mortgage is still outstanding, so that at no time has the vendor been in a position to tender a title free and clear of all incumbrances; but there is a suggestion in the evidence that the understanding between the parties was that this mortgage was to be paid off out of the $7,000 which the plaintiff had agreed to pay upon the delivery of the deed. While the parties were together on the 5th day of October, 1905, a written agreement was entered into in the following language: "The closing of title under contract dated the 17th day of August, 1905, between Hugo Lamprecht, as vendor, and Louis Lese, as vendee, of the premises No. 514 East 120th street, New York City, is hereby adjourned to November 3, 1905, at 11 o'clock a. m., at the office of Lese & Connolly, at No. 35 Nassau street, New York City. It is understood and agreed that the vendee will pay interest on the balance of the purchase money from the date hereof to November 3, 1905, and that the vendor can remain in possession of said premises from November 3, 1905, to December 1, 1905, as a tenant, at a rental of one dollar ($1.00). Title to be closed as of October 5, 1905. Dated New York, October 5, 1905. [Signed] Hugo Lamprecht." On the 3d day of November, after some preliminary interchange of communications, the parties met at the office of Bowers & Sands, who were conducting negotiations for a loan upon the premises in connection with an adjoining parcel owned by the plaintiff, and the vendor was told that the loan had been arranged and that the money would be forthcoming as soon as the search from the Lawyers' Title Insurance & Trust Company could be procured, which would be upon that day or upon the following day. The vendor thereupon refused to delay the closing any longer, and a deed, in form and substance complying with the requirements of the contract, was tendered. This, of course, the plaintiff was unable

to accept at the moment, as he was unprepared to pay over the $7,000; but Mr. Lamprecht was informed by a Mr. Baskerville, representing Bowers & Sands, that the contract called for a conveyance free of incumbrances, and that this $2,000 mortgage was outstanding, and told him that if he would clear the title that he would see to it that the money was paid. But Mr. Lamprecht insisted upon a tender of the deed, and upon the plaintiff failing to accept the same the parties retired. Mr. Ball, attorney for the vendor, told Mr. Lese and Mr. Baskerville that he would see what could be done toward bringing about a closing of the transaction, and on the following Monday, November 6th, Mr. Ball and Mr. Lese, one of plaintiff's attorneys, had a conversation over the telephone, in which Mr. Ball was informed that an action was about to be started to compel specific performance of the contract. Mr. Ball asked for delay, and suggested that the parties go to the home of Mr. Lamprecht at 1 o'clock that afternoon and make an effort to close. Plaintiff, or his counsel, suggested that they could not find the necessary parties in time to close at 1 o'clock, but that if the matter could be held until 8 o'clock in the evening he would be on hand. While Mr. Ball did not assume to speak with authority, it was arranged that they should go to the home of Mr. Lamprecht at 8 o'clock that evening, and the vendor was notified by telegraph that the parties would come, and it is clearly shown by the evidence that the parties did meet at Mr. Lamprecht's house at or very near to 8 o'clock that evening, and that they subsequently found him at a neighboring place, where he refused to do any business, saying in substance that it was too late, that he could not do any business after 8 o'clock, and that he had waited at his home until after 8 o'clock. He admitted that he expected the parties at 1 o'clock, and that he would have closed the title if they had produced the cash, so that it appears that up to 1 o'clock of the 6th day of November the vendor was willing to perform, and that he had not up to that time secured the satisfaction piece necessary to convey a clear title, as he had agreed to do under his contract, and his refusal to do business in the evening of the 6th day of November, after being willing to perform at 1 o'clock of that day, was a clear indication that he did not stand upon his tender of a deed made on the 3d day of November, at which time the premises were not free of incumbrances. It is true, of course, that the mere fact of the existence of this outstanding mortgage, which the vendor could have discharged if the plaintiff had paid over the money, was not sufficient to put the defendant in default, without a tender on the part of the plaintiff and a demand for performance. Higgins v. Eagleton, 155 N. Y. 466, 473, 50 N. E. 287; Vandegrift v. Cowles Engineering Co., 161 N. Y. 435, 443, 55 N. E. 941; 48 L. R. A. 685. But, on the other hand, the defendant could not, by the tender of a deed, with this incumbrance outstanding, put the plaintiff in default, where the latter was proceeding in good faith and with reasonable diligence to perform his contract, and where the delay grew out of circumstances which could not, by the exercise of ordinary vigilance, have been avoided, because time was clearly not of the essence of this

contract. The rule is well established that in actions to compel the specific performance of a contract for the sale of real estate time is not of the essence of the contract, unless in the agreement it is clearly the intent of the parties that it should be so understood. The mere insertion in the contract of a day for the completion does not make such time the essence of the contract, and it will not be implied as essential, except where the subject of the sale has a fluctuating value, or where the object of the contract is a commercial enterprise, or the delay in completion would involve one of the parties in a serious loss. When time is not by stipulation or by implication of the essence of the contract, a court of equity will disregard it, and decree specific performance when an action at law has been lost by default of the party seeking performance, if it be conscientious that the agreement be performed. Hun v. Bourdon, 57 App. Div. 351, 354, 68 N. Y. Supp. 112. The original agreement, in connection with the agreement for an adjournment, in which it was provided that the transfer should be made as of the 5th day of October, which was the date mentioned in the original agreement for the completion of title, in connection with the acts of the vendor three days after his tender of the deed, show conclusively that neither party regarded the day of actual performance as of any great importance. It was agreed in the supplemental agreement for adjournment that the plaintiff should pay the interest on the deferred payment during the period of adjournment; that is, that the vendor should have the use of the $7,000 during that time, the same as he would have had it had the transfer been actually made, and the conveyance was to be the date on which the interest charge or use of the money commenced, so that in equitable contemplation the transfer was made on the 5th day of October, 1905, and the vendor at any time after the 3d day of November, 1905, would have been entitled to recover the sum of $7,000 on the clearing of the title and tendering a deed of conveyance as provided in the contract. The plaintiff would have been ready to complete his purchase on the 3d day of November, except for the fact that there was a delay in securing the search of the title as the foundation for the proposed loan, which the vendor knew was necessary to the completion of the transaction. He asked for a delay of a day that the matter might be brought about, and it would be most inequitable to hold that the vendor, under the circumstances, could work a forfeiture of the plaintiff's payment of $500 on the purchase price, together with the expense of searching title, attorney's fees, and other expenses incident to the transaction, by the tender of a deed while yet the incumbrance was upon the title. We are of opinion that under the circumstances the vendor was bound to accept the plaintiff's offer of performance on the 6th day of November, or as soon thereafter as the transaction could be completely closed, and that it was error to dismiss the plaintiff's complaint, entailing losses, where he was willing to perform his contract, and where had made every reasonable effort to perform it within a reasonable time. The vendor, having permitted his attorney to reopen negotiations for the closing of title, and conceding that he would have acted if the money had been tendered at 1 o'clock on the 6th day of November, may be held to have waived any default on the part of the plaintiff on the 3d day of November. The evidence is decisive and uncontradicted that the vendor stated, when he was requested to perform his contracts shortly after 8 o'clock on the evening of the 6th of November, that he could not secure a discharge of the outstanding mortgage at that time in the evening, and the plaintiff then offered to deduct the amount of the mortgage and pay over the balance, and himself obtain a discharge of the mortgage. Thereupon the vendor stated: "You were to be here at 8 o'clock. You were not here, and now you cannot have the property." Here again we have a clear indication that the vendor understood that 8 o'clock on the evening of November 6th was fixed as the time for closing the transaction. It is also made plain that the plaintiff was in good faith offering to perform, and even going beyond the requirements of the contract by offering to assume the burden of obtaining the satisfaction piece of the mortgage. The vendor did not at any time, after negotiations fixing the time of closing on the 6th day of November, tender a deed to the plaintiff and thereby put him in default. On the contrary, he refused to complete his contract, and good conscience, which is at the foundation of equitable jurisdiction, demands that the plaintiff should be granted some measure of relief, the extent of which may be determined upon retrial of the action. The judgment appealed from should be reversed, with costs to appellant to abide the event.