Gerald Mazur, Spec. Ref.
By order dated June 16, 1965 and upon the consent in open court of the attorneys for the respective parties in the above-entitled action, this case was referred to me to hear and determine all the issues therein. By stipulation on the record, the attorneys for the respective litigants agreed to try the issue of liability for the alleged breach of contract first, leaving for a future time the question of damages, if necessary.
Plaintiff has commenced this action for damages allegedly incurred as a result of defendant’s alleged breach of two contracts for the sale of goods to plaintiff.
Sometime in early 1963 plaintiff, a designer and manufacturer of security camera systems, through one of its principals, communicated with the defendant in regard to obtaining bids and quotations for the manufacture, to plaintiff’s specifications, by the defendant, of component parts of these camera systems. After some further contacts and exchange of visits by the parties’ principals, prices were agreed upon. Thereafter, by purchase orders dated March 1,1963 and March 19,1963, certain specified parts were ordered. The March 1 purchase order provided for an April 10, 1963 delivery date, while the March 19 purchase order provided for a delivery date of five to six weeks or before, with a promise of partial shipment during the week of April 8. Both orders provided that time was of the essence and that partial shipments would be accepted. It is conceded that these orders were placed by plaintiff and were accepted by the defendant.
Apparently on April 9, 1963, and at various dates thereafter, up to and including April 26,1963, partial shipments were made, with a total invoice value of $1,748.73. After that date, however, no further deliveries were made by the defendant to the plaintiff.
Plaintiff’s insistence on timely delivery appears to have been occasioned by the fact that it had schedules to meet in its own production.
According to plaintiff’s version of the facts, when it appeared that there would not be timely fulfillment of its orders, one of its representatives visited defendant’s plant and discovered that plaintiff’s work had been taken off the machines in favor of other jobs. However, so frantic was he for delivery, that he requested shipment of anything available, whether in finished or unfinished state, so that plaintiff could utilize whatever parts were usable. There appears to be some indication that at least part of the shipments was not usable.
*1046 Defendant’s version of what happened is in direct contravention to plaintiff’s testimony. According to defendant, it refused to fulfill the balance of the orders because plaintiff failed to pay for the partial shipments, and because plaintiff had been complaining that the tolerances and finishes were not in strict accordance with its specifications. It is defendant’s contention that it was justified in halting production by plaintiff’s attempt to vary its previously submitted specifications by requiring tolerances and finishes out of line with the original price estimates, or as one of defendant’s principals claims he put it to plaintiff’s representative, “ Evidently you want a Cadillac when I thought you were buying a Ford ”.
Since the transaction herein took place prior to September 27, 1964, the effective date of the Uniform Commercial Code, it is governed by the appropriate provisions of article 5 of the Personal Property Law (Uniform Sales Act), now repealed. (Uniform Commercial Code, §§ 10-101, 10-102, 10-105.) The Uniform Sales Act provided that “ Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for nondelivery”. (Personal Property Law, § 148, subd. 1.) Naturally, the seller is excused from performance if its failure is due to the acts of the buyer or a refusal by the buyer to perform on his part. (Vandegrift v. Cowles Eng. Co., 161 N. Y. 435.)
With respect to the defense herein that plaintiff’s nonpayment for the deliveries made constituted a breach of the contract which justified defendant’s refusal to make any further deliveries under the contract, such defense is available only where the contract specifically provides that the goods are to be delivered by stated installments which are to be separately paid for, and only when the breach of contract is so material as to justify the injured party in refusing to proceed further. (Personal Property Law, § 126, subd. 2.) No such feature appears in the purchase orders under consideration. Absent a specific contractual provision to the contrary, partial deliveries do not obligate a buyer to make partial payments. The fact that the contracts herein provided that partial deliveries would be accepted, merely obligated the buyer to accept shipments in a manner he would not otherwise be bound to do (Personal Property Law, § 126, subd. 1), but did not, without more, obligate it to make advance payments. Moreover, even if this were the classic installment sale situation, there is nothing shown on the seller’s part to indicate that it sought immediate payment, but rather, it appears that the defense was raised as a mere after *1047 thought when plaintiff sought to hold defendant accountable. “ The failure to make punctual payments may be material or trivial according to the circumstances ” (Helgar Corp. v. Warner’s Features, 222 N. Y. 449, 454), and in circumstances surrounding the present matter such failure had not at the time of seller’s refusal to make continued deliveries reached the area of materiality sufficient to justify the defendant’s action.
With respect to the defense that the plaintiff itself precipitated the breach, the credible testimony and evidence submitted preponderates the conclusion that this too is afterthought, and while there may have been some discussion as to workmanship, there is no indication that plaintiff was insisting on more than it bargained for or was in any way repudiating the agreement.
It is obvious that the refusal by the seller herein to further perform the contracts was occasioned not as a result of anything the buyer did or omitted to do, but rather as a result of seller’s realization either that it had made an unprofitable bargain or that it could use its machines more profitably. A buyer is entitled to expect full performance of a deal as made, and this is what the plaintiff herein did not get. Plaintiff is, therefore, entitled to recover for damages ensuing by defendant’s delay in performing and refusing to complete deliveries. It is not entitled to recover for the alleged defects in the performance to date, since such are outside the scope of the pleadings herein, and in any event, its acceptance of the goods constituted a waiver of the defects therein.
The above constitutes the decision required by the applicable provisions of the CPLB. Settle interlocutory judgment providing for a trial of the issue of damages.